749 So.2d 558 (2000)
Jamie A. LaFONTAINE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D98-4539.
District Court of Appeal of Florida, Second District.
January 19, 2000.
*559 James Marion Moorman, Public Defender, and Joan Fowler, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Appellant, Jamie LaFontaine (LaFontaine), challenges her convictions for possession of cocaine and drug paraphernalia. LaFontaine pleaded no contest after reserving the right to appeal the denial of her dispositive motion to suppress the contraband. Because we conclude the contraband was seized during an unlawful detention, we reverse.
LaFontaine, a white female, was in her car at a stop sign when she came to the attention of Winter Haven Police Officer Lyle Tripp (Tripp). LaFontaine's window was down, and two black males were leaning into the window. When the two men saw Tripp's patrol car approaching, they walked away from LaFontaine's car. Tripp pulled into a parking lot and watched as LaFontaine pulled away from the stop sign. He then pulled out behind LaFontaine, following her closely enough to read her license plate. LaFontaine testified that Tripp was following her so closely that she believed she was being stopped, so she pulled over onto the curb. However, rather than effecting a stop at that point, Tripp continued past LaFontaine's car. He then pulled over and waited for LaFontaine to pass him again. When she did, he effected the stop.
Tripp initially obtained LaFontaine's driver's license and registration and returned to his vehicle to perform a warrant check. He found no outstanding warrants and no irregularities with LaFontaine's license or registration. Rather than releasing LaFontaine, Tripp then asked her to get out of her car so that he could complete *560 a "field intelligence report." He brought LaFontaine to the back of his patrol car, where he proceeded to complete this report with LaFontaine's personal information, including her social security number, height, and weight. While they were at the back of the patrol car, Tripp asked LaFontaine why she was in the area and why two men had been leaning into her car. LaFontaine told Tripp that the two men were trying to sell drugs. Tripp then asked LaFontaine for consent to search her car and, believing she had no choice, LaFontaine consented. Tripp found a glass pipe containing cocaine residue inside a cigarette case in LaFontaine's purse, which was open inside her car.
At the hearing on LaFontaine's motion to suppress, Tripp testified that he believed the stop was justified because LaFontaine was a white female parked in the middle of the roadway talking to two black men in a predominantly black neighborhood known for drug activity. He also testified that LaFontaine appeared nervous as she drove, and that his suspicions were increased because LaFontaine continuously looked in her rearview mirror as he followed her. Tripp's suspicions were further increased when LaFontaine pulled over to the side of the road and let him pass.
In order to justify an investigatory stop, a police officer must have a reasonable suspicion that the suspect has committed, is committing, or is about to commit a crime. See § 901.151(2), Fla. Stat. (1997); Popple v. State, 626 So.2d 185, 186 (Fla.1993). Whether an officer's suspicion is reasonable is determined by the totality of the circumstances that existed at the time and is based solely on the facts known to the officer before he made the stop. See Travers v. State, 739 So.2d 1262 (Fla. 2d DCA 1999); McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986). A "hunch" that criminal activity may be occurring is not sufficient. See McCloud, 491 So.2d at 1167. In this case, Tripp's testimony established that he had a hunch, but no reasonable suspicion, that LaFontaine had committed a crime. Absent a reasonable suspicion, no legal basis existed to support the stop of her car. Because the initial stop was illegal, Tripp's request that LaFontaine get out of her car for further questioning was also illegal. See Popple, 626 So.2d at 187.
The fact that LaFontaine subsequently consented to the search of her car does not necessarily remove the taint of the illegal stop.
When the initial police activity is illegal, the State must establish by "`clear and convincing evidence' that there has been an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given." Gonzalez v. State, 578 So.2d 729, 736 (Fla. 3d DCA 1991) (footnote omitted); see State v. Boyd, 615 So.2d 786, 790 (Fla. 2d DCA 1993).
Jordan v. State, 707 So.2d 338, 339 (Fla. 2d DCA 1998). No such unequivocal break was established in this case. Tripp's request that LaFontaine leave her car and accompany him to the back of his patrol car was an overt display of authority "which restrained her freedom from movement because a reasonable person under the circumstances would believe that [s]he should comply." Popple, 626 So.2d at 188. Under these circumstances, LaFontaine's consent was not freely and voluntarily given.
Because we conclude that there was no reasonable suspicion to support Tripp's stop of LaFontaine's car and because LaFontaine's consent was not voluntarily given, we reverse the trial court's order denying her motion to suppress.
Reversed and remanded with directions to the trial court to grant LaFontaine's motion to suppress.
PATTERSON, C.J., and PARKER J., Concur.