**Anthony RANSOM, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0005–CR–199.

Court of Appeals of Indiana.

Dec. 28, 2000.

Edward R. Cardoza, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBERTSON, Senior Judge

### STATEMENT OF THE CASE

Defendant–Appellant Anthony Ransom was charged with unlawful possession of a handgun. He brings this interlocutory appeal from the trial court's denial of his motion to suppress the handgun.

We reverse and remand.

### ISSUE

The following issue is dispositive: whether the trial court erred in denying Ransom's motion to suppress the handgun on the basis that the initial stop of Ransom's vehicle was lawful and that Ransom's consent to the search of the vehicle was voluntary.

### FACTS

The facts, as found by the trial court, indicate that Ransom was driving a vehicle on a narrow Indianapolis street when he encountered an approaching vehicle driven by Indianapolis Police Officer Dennis Nottingham. Because of the narrowness of the road and the presence of parked vehicles on both sides of the road, Ransom's and Officer Nottingham's vehicles could not both fit in the traveled portion of the road. As Officer Nottingham pulled his vehicle to the side of the road, Ransom put his vehicle in reverse and backed around the corner.

Officer Nottingham stopped Ransom's vehicle for "operating his vehicle in reverse." (R. 4). When Officer Nottingham asked Ransom why he was traveling in reverse, Ransom replied that he was looking for a friend's house but did not know

the address. After asking for, and obtaining, Ransom's driver's license, Officer Nottingham asked as "a matter of routine" whether there were any narcotics or weapons in the vehicle. Officer Nottingham then observed that Ransom seemed nervous, did not make eye contact, and did not immediately give a verbal answer. Officer Nottingham also observed that Ransom appeared to be holding his right hand under his leg.

Officer Nottingham returned to his vehicle and ascertained that Ransom's driver's license was valid. Officer Nottingham decided to search Ransom's vehicle on the assumption that Ransom was hiding a weapon, and he called for "back up" to assist him in doing so.

When a fellow Indianapolis Police Officer arrived as "back up," Officer Nottingham, his training officer, and the back up officer approached the vehicle. Officer Nottingham asked Ransom if he could search the vehicle. Upon Ransom's response of "yeah," a search was conducted, and a handgun was discovered.

Ransom was subsequently charged with carrying a handgun without a license. He filed a motion to suppress the handgun, and the trial court held a hearing thereon. The trial court concluded that the stop was lawful on the basis that "Ransom's conduct in driving in reverse around a street corner was a possible indication of reckless driving." (R. 5). The trial court also concluded that Officer Nottingham's initial questioning of Ransom concerning the presence of narcotics or weapons was unlawful on the basis of *Lockett v. State,* 720 N.E.2d 762 (Ind.Ct.App.1999), *trans. granted.*[1] The trial court further concluded that the consent to the search was voluntary. Thus, although the trial court granted the motion to suppress "insofar as it relates to the responses given by Ransom to [Officer] Nottingham's question about the presence of weapons in the car[,]" the court ultimately denied the motion "with respect to the search of the vehicle, as the search was supported by independent voluntary consent from Ransom." (R. 6). Ransom now appeals the denial of his motion.

### DISCUSSION AND DECISION

A trial court has broad discretion in ruling on the admissibility of evidence. *Drake v. State,* 655 N.E.2d 574, 575 (Ind. Ct.App.1995). We will reverse a trial court's ruling on the admissibility of evidence only when it has been shown that the trial court abused its discretion. *Carter v. State,* 692 N.E.2d 464, 465 (Ind.Ct. App.1997). A trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency of the evidence. *Id.* Upon reviewing a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses but instead consider all uncontroverted evidence together with the conflicting evidence that supports the trial court's decision. *Smith v. State,* 543 N.E.2d 634, 637 (Ind.1989). However, unlike the typical sufficiency of the evidence case, we must also consider the uncontested evidence favorable to the defendant. *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied.* We review de novo the ultimate determination of reasonable suspicion. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

A·police officer may stop a vehicle when he observes a minor traffic violation. *Smith v. State,* 713 N.E.2d 338, 342 (Ind.Ct.App.1999), *trans. denied.* A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause. *Id.*

---

1. The validity of this conclusion is not dispositive. However, we note that *Lockett* was never certified by the clerk of this court. *See* Ind.Appellate Rule 15(B). We further note that transfer has been granted in *Lockett* and that the case is therefore "vacated and held

for naught, except as to any portion thereof which is expressly adopted and incorporated by reference by the Supreme Court, and further, except where summarily affirmed by the Supreme Court." Ind.Appellate Rule 11(B)(3).

■ The basis of Ransom's argument on the legality of the stop is that Officer Nottingham was not able to articulate an objectively justifiable reason for making the stop. In other words, he argues that Officer Nottingham was unable to articulate any traffic violation or reasonable suspicion that would have justified the stop.

A fair summary of Officer Nottingham's testimony relating to this issue is that he stopped Ransom for driving in reverse, an activity that, in and of itself, is not unlawful. There is no apparent violation of the reckless driving statute, which prohibits the reckless activity of (1) driving at an unreasonably high or low rate of speed in a manner that endangers the safety or the property of others or that blocks the proper flow of traffic; (2) passing another vehicle from the rear while on a slope or on a curve where vision is obstructed; (3) improperly driving in and out of a line of traffic; (4) speeding up or refusing to give one-half of the roadway to a driver overtaking and desiring to pass; or (5) passing a school bus on a roadway when the arm signal is in the device's extended position. Ind.Code § 9–21–8–52. Furthermore, contrary to the State's argument on appeal, there is no apparent violation of the obstruction of traffic statute (Ind.Code § 35–42–2–4), as Ransom did not unlawfully block the progress of Officer Nottingham or any other motorist as he backed up his vehicle. Thus, Officer Nottingham did not have an objectively justifiable reason for stopping Ransom, and the trial court erred in finding that the stop was lawful.

■ The State argues that even if Ransom did not commit a traffic violation, Officer Nottingham was justified in his actions because he had a good faith belief that Ransom had done so. Although a law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop, Ind.Code § 34–28–5–3, an officer's mistaken belief about what

constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible. *Cash v. State,* 593 N.E.2d 1267, 1269 (Ind.Ct.App.1992) (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)) (holding that "simple good faith on the part of the arresting officer is not enough. If it were, 'the protection of the Fourth Amendment would evaporate' ").[2]

■ Although the State does not raise the issue, there is a possibility that Ransom's consent to the search may have removed the taint of the unlawful stop. In deciding whether a confession following an illegal arrest should be suppressed, we have held that it is proper to consider "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Snellgrove v. State,* 569 N.E.2d 337, 341 (Ind.1991) (quoting *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 445 (1963)). We identified several factors to be considered, including "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly the purpose and the flagrancy of the official misconduct.... The voluntariness of the statement is a threshold requirement." *Id.* at 342 (quoting *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427 (1975)).

In the context of whether the taint of illegal entry into a defendant's house was removed by the defendant's consent to a search within an hour of the entry, we applied the aforementioned factors and concluded that "[u]nder the facts and circumstances of this case, we cannot say that [the defendant's] consent was given voluntarily and independent of the illegal en-

---

**2.** We reject the State's reliance on *English v. State,* 603 N.E.2d 161 (Ind.Ct.App.1992), because the court's reference to the police offi-

cer's good faith belief was dicta given that a traffic infraction had in fact been committed.

try." *Galvin v. State*, 582 N.E.2d 421, 424 (Ind.Ct.App.1991), *trans. denied.* The factors set forth in *Galvin* comport with the factors stated by other jurisdictions in the context of consent given subsequent to an unlawful stop or frisk. *See e.g., LaFontaine v. State*, 749 So.2d 558, 560 (Fla.App. 2000) (holding that "[w]hen the initial police activity is illegal, the State must establish by clear and convincing evidence that there has been an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given"); *State v. Kerley*, 134 Idaho 870, 11 P.3d 489, 493 (Ct.App.2000) (holding that consent to the search does not expunge the taint of unlawful police activity where the events are irrevocably intertwined); *State v. Weddle*, 18 S.W.3d 389, 396 (Mo.App.E.D.2000), *trans. denied* (holding that "in determining whether the evidence should be excluded as fruit of the poisonous tree or if Defendant's consent validates the search, the government has the dual requirement of showing (1) the consent was voluntary and (2) whether it has sufficient independence from the prior illegality to purge the taint of that illegality"); *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa.2000) (holding that where an illegal seizure precedes the consent to search, the court must consider both whether the consent was voluntary and whether there was a break in the causal connection between the illegality and the evidence thereby obtained); *State v. Robinson*, 306 S.C. 399, 412 S.E.2d 411, 414 (1991) (holding that consent to a search procured during an unlawful stop is invalid unless such consent is voluntary and there are attenuating circumstances that establish that the consent is not an exploitation of the unlawful stop).

We hold that it was the State's burden to show both that Ransom's consent was voluntary and that there was a break in the causal connection between the unlawful stop and the evidence obtained. With regard to the voluntariness of the consent, we note that a consent to a search is valid except when procured by fraud, duress, fear, or intimidation or when it is merely a submission to the supremacy of the law. *Williams v. State*, 611 N.E.2d 649, 651 (Ind.Ct.App.1993), *trans. denied.* The voluntariness of the consent to search is to be determined by consideration of the totality of the circumstances. *Id.*

The trial court, in making its determination of voluntariness, placed great emphasis on its belief that Ransom "immediately and without hesitation" gave consent to the search of his vehicle. The uncontested evidence before the court, however, shows that Ransom's consent was neither immediate nor given without hesitation. Given the trial court's error, the short passage of time between the unlawful stop and the search, and the causal connection between the stop and the search, we cannot say that Ransom's consent purged the taint of Officer Nottingham's unlawful conduct. Accordingly, we hold that the trial court abused its discretion in not suppressing the handgun.

### CONCLUSION

The trial court erred in concluding both that the initial stop was lawful and that Ransom's consent was voluntary. Therefore, the trial court erred in not suppressing the handgun.

Reversed and remanded with instructions to grant Ransom's motion.

BROOK, J., and SULLIVAN, J., concur.