**Amber R. COMBS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 42A01–0707–CR–338.**

Court of Appeals of Indiana.

Jan. 16, 2008.

Christopher A. Ramsey, Ramsey Law Office, Vincennes, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Amber R. Combs brings this interlocutory appeal of the trial court's order denying her motion to suppress evidence.

We reverse.

### ISSUES

1. Whether the trial court erred when it found that the officer's traffic stop was lawful.

2. Whether the trial court erred when it found that impoundment of Combs' vehicle was warranted and the inventory search undertaken was "valid." (App.9).

### FACTS

On the evening of February 14, 2005, Officer Brent Clark of the Indiana State Police observed a vehicle traveling left of center on a street in Vincennes. Clark activated his lights. The vehicle pulled to the side of the street in a gravel area alongside 3 West Reel Avenue, the residence of Jennifer Abel. Combs was the driver, and her two children were in the back seat of the vehicle. Clark learned that Comb's driving privileges were suspended, and she lacked insurance on the vehicle. Clark determined that her vehicle should be impounded. Clark searched Combs' purse and found two pipes, which he recognized as the type used to ingest methamphetamine, and a clipped plastic bag corner containing a white residue that he believed to be methamphetamine. Clark then conducted an inventory of the vehicle's contents, and the vehicle was towed.

On April 12, 2005, the State charged Combs with two class D felonies: possession of methamphetamine, and neglect of a dependent.[1] Subsequently, continuances were granted pursuant to Combs' requests. On January 4, 2007, Combs filed a motion to suppress "all evidence obtained as a result of the search of" her vehicle, arguing that the inventory search violated both the U.S. and Indiana Constitutions. (App.23).

On April 30, 2007, the trial court held a hearing on the motion to suppress. Clark testified that he had observed Combs' vehicle traveling "left of center" on the street and made the traffic stop for that reason. (App.[2] 46). Clark testified that Combs "admitted she was suspended and did not have insurance for the vehicle." (App.47). Clark also testified that in such circumstances, ISP policy provided that the vehicle should be impounded. Combs offered into evidence, and the trial court admitted, Exhibit A.—the video-and-audio recording of the events subsequent to the stop. The recording reflects that after Clark learned that Combs was a suspended driver and lacked insurance, he directed Combs to exit the vehicle; then stated that she was "not going to jail" (Ex. A); and then told her to place her purse on the trunk.

---

1. Clark was also given "a ticket for driving while suspended and one left of center [sic]." (App.76).

2. Combs did not submit a separate transcript of the April 30, 2007, hearing but rather includes the transcript in her Appendix.

Clark is next seen searching Combs' purse. Clark testified that because policy required the vehicle to be impounded, he conducted "an inventory of Combs' purse." (App.51). He further testified that after searching the purse, he had "moved to the vehicle" and conducted an inventory search on it. *Id.*

Combs testified, and admitted that she operated her vehicle "on the wrong side" of the street. (App.74). She further testified that this was necessary because vehicles were parked on the side of the street such that she "would have hit the other vehicles" if she had not done so. *Id.* In addition, Combs testified that she knew Abel, and that in response to Clark's activation of his lights, she had "pulled over into a dirt like area" alongside Abel's residence where "everyone parks" and which was "completely off the road." (App.72). Crystal O'Hara, Abel's "best friend" and sister to the man "[Combs] was dating," also testified that the area where Combs parked the vehicle was the "commonly used parking area" for Abel's residence. (App.68). Combs admitted that she had not asked Clark whether the vehicle could be left where it was parked, and there was no evidence that Abel had authorized or agreed to the vehicle remaining there.

On June 11, 2007, the trial court issued its order denying Combs' motion to suppress, noting Combs' claims that "the conduct observed by Trooper Clark did not violate Indiana law, rendering the stop illegal," and "the impoundment of her automobile was not warranted[,] rendering the inventory search illegal." (App.5). The trial court held that the traffic stop was "lawful," and that the impoundment of Combs' vehicle and search incident thereto were "valid." (App.5, 9).

## DECISION

When reviewing a trial court's denial of a motion to suppress, we determine whether substantial evidence of probative value exists to support the trial court's ruling. *Litchfield v. State,* 824 N.E.2d 356, 358 (Ind.2005). We do not reweigh the evidence. *Id.* Further, we "consider the evidence favorable to the trial court's ruling, as well as substantial uncontradicted evidence to the contrary, to decide whether the evidence is sufficient to support the ruling." *Holder v. State,* 847 N.E.2d 930, 935 (Ind.2006).

### 1. *The Stop*

■ Combs first argues that the trial court erred when it denied her motion to suppress because Clark "lacked an objectively justifiable basis for stopping" her, given that the "plain language of the statute mandates operating in the right lane when there is sufficient space to safely do so." Combs' Br. at 4, 5. She reminds us that her uncontradicted testimony was that she could only avoid hitting other vehicles by driving left of center.

■ The Fourth Amendment of the U.S. Constitution and Article 1, Section 11, of the Indiana Constitution protect citizens from unreasonable searches and seizures. *Holder,* 847 N.E.2d at 935. However, a police officer may stop a vehicle when he observes a minor traffic violation. *State v. Quirk,* 842 N.E.2d 334, 340 (Ind.2006). Such a stop does not run afoul of either constitutional provision. *Id.*

Indiana statute provides that

[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing overtaking and passing.

(2) When the right half of a roadway is closed to traffic under construction or repair.

(3) Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable to a roadway divided into three (3) marked lanes.

(4) Upon a roadway designated and signposted for one-way traffic.

IND.CODE § 9–21–8–2(a). Combs admitted that she was driving "left of center," *i.e.,* not "upon the right half of the roadway." *Id.*

As Combs notes, in *Ransom v. State,* 741 N.E.2d 419, 421 (Ind.Ct.App.2000), *trans. denied,* we stated that "[a] stop is lawful if there is an objectively justifiable reason for it." *Id.* (citing *Smith v. State,* 713 N.E.2d 338, 342 (Ind.Ct.App.1999), *trans. denied* ). In *Ransom,* the officer executed the traffic stop after observing Ransom "driv[e] in reverse, an activity that, in and of itself, is not unlawful." *Id.* Similarly, in *Smith,* the officer stopped Smith upon observing that the "license plate on Smith's blue and white car was registered to a yellow car," a fact later explained as being the result of its having been repainted. 713 N.E.2d at 341. Hence, in neither *Ransom* nor *Smith* did the conduct observed by the officer constitute an actual traffic infraction.

If, arguably, the statute indeed contains an implicit requirement that the roadway contain a "right half" that can safely be driven upon, then we consider not only Combs' testimony as to the condition of the roadway but also Clark's testimony that he did not "know whether cars were parked on the street" there that night. (Tr. 53). By the time of the hearing, it had been more than two years since Clark's stop of Combs. Combs testified that Clark had ticketed her for driving left of center, and there was no evidence that she had brought the sufficiency of the roadway's width to the attention of Clark in that regard. Further, it would be objectively reasonable for the officer to stop a vehicle traveling left of center even *if* it were subsequently determined that the width of the roadway in that location was insufficient for the vehicle to travel in the right half. In *Ransom,* we stated that an officer's "good faith belief that a person has committed a traffic violation will justify a traffic stop." 741 N.E.2d at 422. The trial court concluded that Clark "conducted a lawful traffic stop based on a good faith belief that a violation had occurred after observing [Combs] drive an automobile left of the center of the roadway." (App.5). We find the evidence to support the trial court's conclusion.

## 2. *The Impoundment*

■ As noted above, both the U.S. and Indiana Constitutions protect citizens from unreasonable searches and seizures. *Holder,* 847 N.E.2d at 935. Searches performed by government officials without warrants are pre se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions. *Id.* The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Taylor v. State,* 842 N.E.2d 327, 330 (Ind.2006). For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Id.* The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. *Id.*

■ A valid inventory search is a well-recognized exception to the warrant requirement. *Id.* The analysis begins with the "threshold question" of "whether the impoundment itself is proper." *Fair v.*

*State*, 627 N.E.2d 427, 431 (Ind.1993). However, the analysis does not end there. "Even if" there is a lawful custodial impoundment of the vehicle, "the constitutional requirement of reasonableness" requires that "the search itself must be conducted pursuant to standard police procedures." *Id.* at 435. Such a requirement "ensure[s] that the inventory is not a pretext for a general rummaging in order to discover incriminating evidence." *Id.*

In the interest of judicial economy, we proceed to the second step of analysis—whether the search conducted exceeded the scope of an inventory search. Although Clark testified that the impoundment itself was required by ISP policy in instances where the driver's license was suspended and the vehicle was uninsured, there was no testimony that such policy required a *search of the driver's purse.* Further, there was no evidence that Combs had abandoned her purse inside the vehicle, or that she disclaimed ownership of it, and she had the purse with her outside the vehicle when Clark instructed her to place it where he then searched it.

Another type of "inventory search" that may be undertaken by law enforcement officials without a warrant is the "inventory of a person's property". William A. Kerr, 16 INDIANA PRACTICE, CRIMINAL PROCEDURE § 2.2f(4) (1991) (citations omitted). This inventory search is "[a]n inventory of the items in the possession of *an arrested person*," and "may be made either at the time of the arrest or subsequently at the time of the booking at the police station or jail." *Id.* (emphasis added). As noted in FACTS, *after* Clark told Combs that she was not going to jail, he proceeded to search her purse. At that point, Clark had evidence of only infraction offenses on the part of Combs—driving left of center, *see* I.C. § 9–21–8–49; driving without insurance, *see* I.C. § 9–25–82; and driving while suspended, *see* § 9–24–19–1.[3] Hence, he lacked evidence to support arresting Combs, and therefore, the search cannot be sustained as one incident to arrest.

Finding that the search of Combs' purse violated constitutional bounds, we conclude that the trial court erred when it denied her motion to suppress the evidence found.

Reversed.

BAKER, C.J., and BRADFORD, J., concur.

---

**3.** There are possible misdemeanor and felony offenses for driving-while-suspended, but according to the recording, the only information possessed by Clark when he searched Combs' purse was that her license had been suspended. Without evidence of a prior conviction, the offense of driving-while-suspended is the class A infraction defined in Indiana Code § 9–24–19–1. *Trotter v. State,* 838 N.E.2d 553, 560 (Ind.Ct.App.2005).