# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JOEL C. WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

FILED
Apr 24 2013, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

STATE OF INDIANA,          )
                           )
   Appellant-Plaintiff,    )
                           )
      vs.             )     No. 67A01-1208-CR-362
                           )
DARRELL KECK,              )
                           )
   Appellee-Defendant.     )

APPEAL FROM THE PUTNAM SUPERIOR COURT
The Honorable Charles D. Bridges, Judge
Cause No. 67D01-1202-CM-127

**April 24, 2013**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Darrell Keck was stopped after police saw him driving on the left side of a county road. He was charged with operating a vehicle while intoxicated[1] and operating a vehicle with a blood alcohol level of .08 or more,[2] both Class C misdemeanors. Keck moved to suppress evidence arising out of the stop, arguing police should not have stopped him because road conditions were so bad he could not safely drive on the right side of the road. In granting Keck's motion to suppress, the trial court determined "driving left-of-center has become a necessity" because of poor road conditions in the county, and police therefore did not have reasonable suspicion to stop Keck. (App. at 17.) The State appeals, arguing the police had reasonable suspicion to stop Keck because he was driving left of center. We affirm.[3]

## FACTS AND PROCEDURAL HISTORY

On February 12, 2012, Keck was driving westbound on Highway 36. A sheriff's deputy was driving behind Keck and followed him as he turned left onto County Road 100 East. The deputy saw no violations as Keck was driving on the highway or as he turned onto the county road, but he stopped Keck after Keck drove in the center portion of the county road for one-quarter to three-quarters of a mile. There was no traffic approaching from the

---

[1] Ind. Code § 9-30-5-2.

[2] Ind. Code § 9-30-5-1.

[3] We heard oral argument March 19, 2013, at Paoli High School at the invitation of Orange Circuit Court Judge Larry R. Blanton. We thank Judge Blanton and the School for their hospitality and commend counsel on the quality of their oral advocacy.

2

other direction. Keck was not driving erratically, but he was driving slower than the speed limit.

County Road 100 is a two-lane road, but it is not as wide as most. It does not have a center line. The surface is "chip-and-seal"[4] in parts and gravel in others. The officer who stopped Keck testified the outside portion of the road was covered in gravel, and operating with one tire on gravel and the other on pavement was a potential driving hazard. The officer recalled at least two chuckholes in the road. However, the officer testified he was in his "driving portion of the roadway" while he followed Keck. (Tr. at 15.)

Keck's passenger testified the road was "terrible," (*id*. at 22), and "you have to" drive left of center because "you can't without hitting every hole in the road, you have to go left." (*Id*.) He testified Keck was driving "a little slower . . . because of the road condition." (*Id*. at 23.) The passenger asked the officer why he pulled Keck over, and the officer told him it was because Keck was driving under the speed limit and left of center.

Keck moved to suppress the evidence the officer obtained from the stop on the ground there was no reasonable suspicion to stop him. In granting the motion, the trial court took judicial notice that the condition of the county roads makes it

> wholly unreasonable to expect motorists in Putnam County to take a perfectly straight course, on the far right side of the roadway riddled with potholes in the

---

[4] The Ohio Department of Transportation explains:

> "Chip Sealing" is a common pavement maintenance practice that extends pavement life and provides a good driving surface. . . . Hot mix asphalt pavement is produced by heating liquid asphalt and mixing it with aggregate, with the mix then spread and compacted to form a durable road structure and riding surface.

http://www.dot.state.oh.us/districts/D03/Pages/ChipSealFactSheet.aspx (last visited February 21, 2013).

> absence of oncoming traffic . . . . [D]riving left of center has become a
> necessity with the current conditions of our county roads.

(App. at 17.)

## DISCUSSION AND DECISION

The State has the burden to show the measures it used to seize evidence were constitutional. *State v. Sitts*, 926 N.E.2d 1118, 1120 (Ind. Ct. App. 2010). In reviewing a motion to suppress, we do not reweigh the evidence, but determine if there is substantial evidence of probative value to support the trial court's ruling. *State v. Aynes,* 715 N.E.2d 945, 949 (Ind. Ct. App. 1999), *reh'g denied*. We look to the totality of the circumstances and consider all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. *Id*. The trial court observes the witnesses and is the sole judge of their credibility and of the weight to be given their evidence, *Robinson v. Priest*, 146 Ind. App. 442, 445, 256 N.E.2d 582, 584 (1970), and we are required to accept the trial court's assessment of their credibility. *Frasier v. State*, 794 N.E.2d 449, 461 (Ind. Ct. App. 2003), *reh'g denied, trans. denied*.

The Fourth Amendment to the United States Constitution and Article 1, Section 11, of the Indiana Constitution protect citizens from unreasonable searches and seizures. *Combs v. State*, 878 N.E.2d 1285, 1288 (Ind. Ct. App. 2008). A police officer may stop a vehicle when he observes a minor traffic violation. *Id.* Such a stop does not run afoul of either constitutional provision. *Id*. Whether an officer has an objectively justifiable reason for a traffic stop is determined on a case-by-case basis by engaging in a fact-sensitive analysis of

4

the totality of the circumstances. *Sitts*, 926 N.E.2d at 1120. An officer's good faith belief a person has committed a traffic violation will justify a traffic stop. *Combs*, 878 N.E.2d at 1289. But an officer's "mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible." *Ransom v. State*, 741 N.E.2d 419, 422 (Ind. Ct. App. 2000), *trans. denied*.

Ind. Code § 9-21-8-2(a) provides that on "all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway." But subsection (b) provides: "a vehicle proceeding at less than the normal speed[5] of traffic at the time and place under the conditions then existing shall be driven: (1) in the right-hand lane then available for traffic; or (2) as close as practicable to the right-hand curb or edge of the roadway." Ind. Code § 9-21-8-2(b) (footnote added).

The State argues subsection (a) controls and permitted the police to stop Keck when he drove on the left side of the road. Keck argues subsection (b) controls, and the stop was unreasonable because, in light of the road conditions, he was driving as close as practicable

---

[5] In its brief, the State argues this subsection does not apply because "there was no traffic present at that time . . . [t]herefore, Defendant could not be 'proceeding at less than the normal speed of traffic at that time.'" (Br. of Appellant at 9.) On the next page of its brief, the State notes testimony Keck was driving at a reasonable rate of speed for the road conditions. It then asserts he was "driving at the same rate of speed *as all other drivers*, (*id*. at 10) (emphasis added), and therefore could not be proceeding at less than the normal speed of traffic. The State does not explain how Keck could be driving at the same speed as all other drivers when "there was no traffic present." Its allegation Ind. Code § 9-21-8-2(b) does not apply because Keck could not have been "proceeding at less than the normal speed of traffic at that time" also appears inconsistent with its own Statement of Facts, where the State notes Keck drew the police officer's attention because he was traveling twelve miles per hour slower than the speed limit. Finally, in its reply brief, the State says Keck was driving at the normal speed of traffic because the normal speed on a road in poor condition is less than the normal speed of a well-maintained road. We decline the State's invitation to hold subsection (b) does not apply on the ground Keck could not have been proceeding at less than the normal speed of traffic at that time.

to the right edge of the roadway. There was evidence before the trial court to support a conclusion subsection (b) applies and Keck was not in violation.

The officer who stopped Keck testified the outside portion of the road was covered in gravel and operating with one tire on gravel and the other on pavement was a potential driving hazard. The officer recalled at least two chuckholes in the road. Keck's passenger testified the road was "terrible," (Tr. at 22), and "you have to" drive left of center because to avoid "hitting every hole in the road, you have to go left." (*Id*.) He testified Keck was driving "a little slower . . . because of the road condition." (*Id*. at 23.) That evidence permitted the trial court to conclude the stop was improper.

In *Combs*, a police officer stopped Combs' car after he saw it traveling left of center on a street in Vincennes. Combs admitted she was driving on the wrong side of the street but testified it was necessary because vehicles were parked on the side of the street and she would have hit them if she had not done so. We found the stop was lawful but a subsequent search was not. *Id*. at 1290. The stop was lawful because there was evidence the officer "conducted a lawful traffic stop based on a good faith belief" there had been a violation.[6] *Id*. at 1289. In the case before us, there was evidence to support the trial court's conclusion the

---

[6] Combs testified she had to drive on the wrong side of the street because vehicles were parked on the side of the street and she would have hit them if she had not done so. But the trial court also heard the police officer's testimony that he did not know whether cars were parked on the street there that night, and it noted by the time of the hearing, it had been more than two years since the stop. Combs testified the officer ticketed her for driving left of center, but there was no evidence she had brought the sufficiency of the roadway's width to the officer's attention.

The State asserts in its brief that we "rejected Combs's necessity argument as an excuse" for driving left of center. (Br. of Appellant at 7.) We did not. There was evidence to permit the trial court in *Combs* to find the officer had a "good faith belief" there had been a violation. *Combs*, 878 N.E.2d at 1289. We did not decide that issue by "reject[ing] Combs's necessity argument."

6

traffic stop was not lawful because there was no violation.

In *Ransom*, the evidence reflected the officer's "mistaken belief about what constitutes a violation," which, we held, is not good faith. 741 N.E.2d at 422. The officer stopped Ransom for driving in reverse, an activity that is not necessarily unlawful. We noted there was not, as the State argued, any apparent violation of the reckless driving statute, or the obstruction of traffic statute. Thus, the officer did not have an objectively justifiable reason for stopping Ransom, and the trial court erred in finding that the stop was lawful. *Id*. Here, as in *Ransom*, there was evidence the officer had a "mistaken belief about what constitutes a violation," which does not amount to a good faith belief there has been a violation as in *Combs*.

Nor can we find the trial court erred to the extent it determined Keck could not have complied with Ind. Code § 9-21-8-2(a) and instead had to drive in the center of the road. In *State v. Rhodes*, 950 N.E.2d 1261 (Ind. Ct. App. 2011), a traffic stop was premised on Rhodes' violation of Ind. Code § 9-21-8-25, which provides a turn signal must be given continuously during not less than the last two hundred feet traveled by a vehicle before turning or changing lanes. Rhodes argued, among other things, the State did not show that it was possible for him to comply with the statute. The police officer who stopped Rhodes estimated Rhodes turned his signal on about 150 feet before turning, but the record did not reflect whether there was at least 200 feet between the place where he turned onto Market Street and the place where he turned into a nearby alley. We agreed "the State failed to show that compliance with the statute was possible under the circumstances. . . . Thus, we cannot

7

say that the trial court erred by concluding that Rhodes was not properly stopped for a traffic violation." *Id*. at 1265. Similarly, in the case before us, the trial court heard evidence that could support a conclusion Keck's compliance with Ind. Code § 9-21-8-2(a) was not possible under the circumstances.[7]

As the trial court heard sufficient evidence[8] to support its conclusion Keck was in compliance with Ind. Code § 9-21-8-2(b) and could not have complied with subsection (a), we cannot say the trial court erred to the extent it found the stop improper. We therefore affirm.

Affirmed.

ROBB, C.J., and RILEY, J., concur.

---

[7] The trial court said "[D]riving left of center has become a necessity with the current conditions of our county roads," and it is "wholly unreasonable to expect motorists in Putnam County to take a perfectly straight course, on the far right side of the roadway riddled with potholes in the absence of oncoming traffic." (App. at 17.) We recently noted in *Killebrew v. State*, 976 N.E.2d 775, 780 (Ind. Ct. App. 2012), that "[i]f we were to hold that an action equally common among unimpaired drivers could justify a traffic stop, that ruling would be ripe for abuse and would not strike a reasonable balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation of privacy."

[8] The State also argues the trial court erred when it took judicial notice of Putnam County road conditions. We need not decide whether that was a proper subject for judicial notice; as explained above, there was sufficient evidence before the trial court to permit it to grant Keck's motion to suppress.

We reject the State's argument the trial court "based its order solely on the fact of which it took judicial notice" and "did not consider the testimony of the witnesses" who testified about the condition of the road. (Reply Br. of Appellant at 3.) It is true the trial court did not explicitly *say* it was considering that testimony in addition to its judicial notice, but "[i]n all cases we presume the trial court considers all the evidence." *Benda v. Benda*, 553 N.E.2d 159, 163 (Ind. Ct. App. 1990), *trans. denied*. The State has offered nothing to rebut the presumption the trial court considered all the evidence before it. The trial court could have found not credible the officer's testimony that Keck was violating Ind. Code § 9-21-8-2(a). As we may not reweigh the evidence or judge the credibility of the witnesses, we decline to disagree.

8