**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 20 2014, 10:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CRAIG PERSINGER**
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLYDE WILLIAMS, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 27A04-1305-CR-253 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Warren Haas, Judge
Cause No. 27D03-1208-FD-434

**February 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

A police officer could not see some of the numbers on Clyde Williams Jr.'s license plate and then saw him briefly cross the center line twice. The officer pulled him over, at which point he learned that Williams was a habitual traffic violator. Williams now appeals his conviction for Class D felony operating a motor vehicle while privileges are suspended, arguing that the officer did not have reasonable suspicion to stop him. Finding that the officer had reasonable suspicion to stop Williams because he crossed the center line, we affirm Williams' conviction.

**Facts and Procedural History**

On the afternoon of July 3, 2012, Grant County Sheriff's Deputy Brent Beebe was on patrol in Marion, Indiana, when he saw a red truck occupied by two males. Williams was the driver. Deputy Beebe thought the passenger was not wearing a seatbelt so he decided to follow the truck. He also saw scrap metal in the truck bed. Deputy Beebe turned on his in-dash camera. While Deputy Beebe was following the truck, he could not see one or two of the license-plate numbers because they were partially obscured by the ball on the trailer hitch. Deputy Beebe stopped and waited at the end of a road for several minutes to see if the truck belonged in the neighborhood or if they were trying to avoid him. When the truck appeared again, Deputy Beebe followed it onto Horton Street, which is a two-way street with a double-yellow line in the center. The truck was the only car on the road at the time. While Officer Beebe was following the truck, he saw Williams briefly cross the center line twice. Officer Beebe pulled over Williams, at which point he learned from dispatch that Williams was a habitual traffic violator. Ex. 2.

2

The State charged Williams with Class D felony operating a motor vehicle while privileges are suspended. Williams filed a motion to suppress all evidence stemming from the traffic stop because the evidence "does not show that Deputy Beebe had proper constitutional grounds to stop the vehicle in question." Appellant's App. p. 29. At the motion-to-suppress hearing, Deputy Beebe testified, and the video from his in-dash camera was admitted into evidence. *See* Ex. 1. The court denied Williams' motion, finding that "the weight of the evidence is that the vehicle went left of center twice. . . . The officer had every right to make the . . . stop . . . ." Tr. p. 30. The court also found that the partially obscured license plate, by itself, supported the stop.[1]

Williams did not seek an interlocutory appeal, and a bench trial was held. The motion-to-suppress hearing was incorporated into Williams' bench trial. The trial court found Williams guilty as charged and explained its reasoning "in case I'm wrong":

> I'm looking at Indiana Code 9-21-8-2, vehicles to be driven on the right half of the road . . . and then there are four (4) exceptions, none of which apply to the case that we have in front of us. He, in my opinion, was not on the right half [o]n at least two (2) times when Officer Beebe was following him and looking for an opportunity to make a pretense stop. He was there investigating possible other criminal activity and frankly I believe he waited until he . . . saw what he believed was a traffic infraction and [what] I believe was a traffic infraction. And I'm looking at the video and I keep seeing that truck go across . . . what I think is . . . the line . . . on two (2) occasions, at

---

[1] The trial court explained:

I think it's an interesting argument about whether a license plate's obscured by a normal accessory. The . . . trailer hitch, which I would refer to as a knee knocker [be]cause that's what happens to me. So if the legislature wants the license [plate] to [be] unobstructed, if I were driving my truck, it would be a simple thing for me to remove the trailer hitch. And then the license [plate] is fully exposed. And I, I'm basing it on the weight of the testimony, the Officer's testimony is he couldn't see it . . . until he got up on it because of . . . that ball on the trailer hitch. Maybe that's a wrong decision, but I think the Officer is within his rights to make the stop based on that and that alone.

Tr. p. 28-29.

3

least. And so I think that, the reason to make a stop was permitted by law. And there's nothing wrong with a pretense stop as long as you have a basis for making the stop.

*Id.* at 77. As for the partially obscured license plate, the court said that when Deputy Beebe was behind the truck, "there [was] at least one (1) number he could not see. So I think he had two (2) pretense reasons to make that stop because there were two (2) infractions." *Id.* at 78. The court then sentenced Williams to two years with one-and-a-half years suspended to probation. The court also suspended Williams' driving privileges for life.

Williams now appeals.

**Discussion and Decision**

Williams contends that Deputy Beebe did not have reasonable suspicion to conduct a traffic stop and therefore the trial court erred in admitting the evidence stemming from the stop.[2]

We review the admissibility of evidence for an abuse of discretion. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied*. We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* We will not reweigh the evidence, and we consider any conflicting evidence in favor of the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. *Combs v. State*, 878 N.E.2d 1285, 1288 (Ind. Ct. App. 2008). It is well settled that a police officer may stop a car when he observes a minor

---

[2] Williams makes his argument pursuant to the Fourth Amendment only.

traffic violation.  *Goens v. State*, 943 N.E.2d 829, 832 (Ind. Ct. App. 2011); *see also Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013), *reh'g denied*.  Whether the officer's suspicion was reasonable is determined on a case-by-case basis by engaging in a fact-sensitive analysis of the totality of the circumstances.  *Sitts v. State*, 926 N.E.2d 1118, 1120 (Ind. Ct. App. 2010).  An officer's good-faith belief that a person has committed a traffic violation will justify a traffic stop. *Id.*  But "an officer's mistaken belief about what constitutes a violation does not amount to good faith.  Such discretion is not constitutionally permissible." *Id.* (quotation omitted).  The determination of reasonable suspicion requires de novo review on appeal.  *Goens*, 943 N.E.2d at 832.

According to Indiana Code section 9-21-8-2(a), upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway.  In other words, Section 9-21-8-2(a) requires cars traveling on two-lane roads to remain on the right half of the road. *Sitts*, 926 N.E.2d at 1121.  There are listed exceptions; however, none of them apply here. Deputy Beebe testified that while he was following Williams on the two-way street, Williams briefly crossed the yellow center line twice.  *Cf. id.* (finding no violation of Section 9-21-8-2(a) because defendant merely crossed the line that divided lanes going the same direction of travel and did not cross into the opposite lane of travel).  The video from Deputy Beebe's in-dash camera was played to confirm this.  *See* Ex. 1.  Notably, Williams did not present any evidence that he could not comply with the statute and drive on the right half of the road.  *See State v. Keck*, 986 N.E.2d 847, 852 (Ind. Ct. App. 2013) ("the trial court heard evidence that could support a conclusion Keck's compliance with Ind. Code § 9-21-8-2(a) was not possible under the circumstances").

Williams appears to concede that he crossed the center line twice but asserts that his driving was not erratic. *See* Appellant's Br. p. 7 ("The evidence construed most favorably to the trial court's judgment would show that WILLIAMS' vehicle may have briefly brushed up against the center line briefly on two occasions during the period in which Deputy Beebe was observing the vehicle. The video evidence and Beebe's own testimony do not support a conclusion that WILLIAMS was driving erratically."). However, erratic driving is not what Section 9-21-8-2 prohibits. In addition, Williams was not pulled over for impaired driving; he was pulled over for crossing the center line. *Cf. Atkinson v. State*, 992 N.E.2d 899 (Ind. Ct. App. 2013) (finding police officer had reasonable suspicion to stop defendant where defendant repeatedly drifted from the far right side over the fog line and back to the center line—not for crossing the center line), *trans. denied.*

It is well settled that a police officer may stop a car when he observes a minor traffic violation. Here, the evidence shows that Williams briefly crossed the center line twice and was therefore not driving on the right half of the road, which Section 9-21-8-2(a) requires. Accordingly, the stop was lawful and the trial court did not abuse its discretion in admitting the evidence stemming from the stop.[3] We therefore affirm Williams' conviction for Class D felony operating a motor vehicle while privileges are suspended.

Affirmed.

RILEY, J., and MAY, J., concur.

---

[3] As a result of this conclusion, we do not need to address whether Deputy Beebe had reasonable suspicion to stop Williams because of the partially obscured license plate.