STATE of Indiana, Appellant–Plaintiff,

v.

Robert RHODES, Appellee–Defendant.

No. 49A05–1012–CR–818.

Court of Appeals of Indiana.

June 14, 2011.

---

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

D. Alan Ladd, Ladd, Thomas, Sallee, & Adams, Indianapolis, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Robert Rhodes took a friend to pick up his vehicle, which had been towed. An employee of the towing company felt that Rhodes was belligerent and possibly drunk, so he called an officer who was working off duty across the street. When Rhodes left the towing company's property, the officer followed Rhodes for a short distance and then initiated a traffic stop. As a result, Rhodes was charged with operating while intoxicated. Rhodes filed a motion to suppress evidence, arguing that the stop was unlawful. The State argued that the officer had two valid reasons to stop Rhodes: (1) the officer observed Rhodes make a turn without signaling far enough in advance, and (2) the call from the towing company gave the officer reasonable suspicion that Rhodes was operating while intoxicated. The trial court found that the State had not established either ground and granted the motion to suppress. We affirm.

### Facts and Procedural History

On June 12, 2010, Rhodes and a friend, Jerry Tinsel, were attending an event in downtown Indianapolis. When Rhodes and Tinsel returned to the place where they had parked, they discovered that Tinsel's car was gone. An employee of a towing company told them that Tinsel's car had just been towed and that Tinsel would be allowed to retrieve his car without paying the fee.

Rhodes then drove Tinsel to Last Chance Wreckers on East Market Street. The impound lot was fenced off and had a "No trespassing" sign. Tr. at 22. However, because the gate was open and he knew that Tinsel did not have to pay, Rhodes drove onto the lot instead of stopping at the office.

According to Michael St. John, a tow truck driver for Last Chance Wreckers, Rhodes drove up "at a pretty good speed," stumbled as he got out of his car, and had a strong odor of alcohol on his breath. *Id.* at 11. St. John told him that they needed to go to the office. Rhodes was "irate," and it took St. John several minutes to convince Rhodes that they needed to go to the office regardless of whether Tinsel had to pay. *Id.* at 15.

Rhodes and Tinsel eventually went to the office. St. John called Larry Giordano, a police officer who regularly works off duty for Angie's List, which is across the street from Last Chance Wreckers. St. John wanted "to make sure that if something happened [Officer Giordano] would be close to us." *Id.* at 14. St. John described the incident to Officer Giordano and indicated that he thought that Rhodes

had been drinking. St. John left while Rhodes and Tinsel were still in the office.

Tinsel got his car back and left Last Chance Wreckers, followed by Rhodes. Officer Giordano saw Rhodes leave and started to follow him. According to Officer Giordano, Rhodes turned on his left turn signal and made an abrupt turn into a parking lot owned by Angie's List. Officer Giordano then conducted a traffic stop. As a result of the stop, Rhodes was charged with operating while intoxicated.

Rhodes filed a motion to suppress the evidence of his intoxication, arguing that the stop was unlawful. At a hearing on November 30, 2010, Officer Giordano testified that he pulled Rhodes over because Rhodes had not signaled his turn 200 feet in advance as required by law. He testified that Rhodes turned his signal on as he was passing Kruse Street, traveled about 150 feet, and then made the turn.[1] Officer Giordano indicated that he also stopped Rhodes because St. John had indicated that he might be drunk and that he would have stopped Rhodes anyway because he investigates anyone who enters the Angie's List property after hours.

Rhodes testified that Officer Giordano turned on his emergency lights as soon as he started following Rhodes. According to Rhodes, he signaled the turn after Officer Giordano initiated the stop because he thought that it would be better to stop in the parking lot than on the street.

After the presentation of evidence, the court discussed the evidence with the parties and ultimately ruled in Rhodes's favor. The court indicated that it did not believe that the officer had reasonable suspicion to stop Rhodes for operating while intoxicated. As to the legitimacy of the traffic violation, the court wavered between two grounds for rejecting the State's arguments. First, the court stated that "the thing that bothers me about this giving a turn signal ... two hundred (200) feet before the street, how can he do that when there's another street in between?" and noted that other drivers could have been confused if Rhodes had turned his signal on sooner. *Id.* at 88. The court then noted Rhodes's testimony that he had turned into the lot in response to the officer turning on his emergency lights and stated, "what ... really bothers ... me is, why would he want to turn into that lot? ... I think that [the officer] had a suspicion that this might be a drunk driver and ... he had to come up with some reason." *Id.* at 90–91. The prosecutor then asked whether the court was basing its ruling on credibility or on the court's belief that Rhodes had not committed a traffic violation. The court said, "I don't know," and continued to discuss both theories. *Id.* at 96. The court concluded by saying, "I'm not going to dispute the Officer on [when Rhodes turned his signal on], but I think, you know, the reason he pulled him over, he had some suspicion that it might be a drunk driver and I think it takes more than that so I'm going to sustain the Motion to Suppress." *Id.* at 98–99.

### Discussion and Decision

■ The State appeals the trial court's ruling suppressing the evidence of Rhodes's intoxication.

In the appellate review of a trial court's motion to suppress, the reviewing court determines whether the record discloses "substantial evidence of probative value that supports the trial court's decision." We do not reweigh evidence. The State, appealing from a negative judgment,

---

1. Officer Giordano described Kruse Street as an alley. Angie's List apparently owns property on both sides of Kruse Street.

must show that the trial court's ruling on the suppression motion was contrary to law.

*State v. Washington*, 898 N.E.2d 1200, 1203 (Ind.2008) (citations omitted). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *State v. Lucas*, 859 N.E.2d 1244, 1248 (Ind.Ct. App.2007), *trans. denied.*

The State argues that Officer Giordano had two independent bases to lawfully stop Rhodes: (1) Officer Giordano saw Rhodes commit a traffic violation; and (2) Officer Giordano had reasonable suspicion that Rhodes was operating while intoxicated.

■ "A traffic violation, however minor, creates probable cause to stop the driver of the vehicle." *State v. Quirk*, 842 N.E.2d 334, 340 (Ind.2006). "Although a law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop, an officer's mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible." *Ransom v. State*, 741 N.E.2d 419, 422 (Ind.Ct.App.2000) (citations omitted), *trans. denied.*

The State contends that Rhodes violated Indiana Code Section 9–21–8–25, which provides:

A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes. A vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet traveled by the vehicle before turning or changing lanes.

The State asserts that the trial court's ruling was based on its belief that Rhodes did not violate the statute because he should not have been required to turn his signal on until he passed Kruse Street. The State argues that the trial court's reasoning is illogical, especially in residential or business districts where there are many places to turn: "To require a motorist to wait until ... only a single possible turn is left before activating the turn signal would not only be contrary to the statute but would put other motorists in harm's way." Appellant's Br. at 7.

Rhodes notes that the trial court questioned why he would have turned onto the Angie's List property unless Officer Giordano had already initiated a traffic stop. He also notes that the State did not show that it was possible for him to comply with the statute. The record is clear that Angie's List is across the street from Last Chance Wreckers. Officer Giordano estimated that Rhodes turned his signal on about 150 feet before turning, but the record does not reflect whether there was at least 200 feet between the place where he turned onto Market Street and the place where he turned onto the Angie's List property. We agree that the State failed to show that compliance with the statute was possible under the circumstances. In addition, if the trial court credited Rhodes's testimony, once the officer turned on his emergency lights, Rhodes was required to pull over immediately. *See* Ind.Code § 9–21–8–35 (providing that drivers must "immediately" yield to an emergency vehicle when its siren or emergency lights are activated). Thus, we cannot say that the trial court erred by concluding that Rhodes was not properly stopped for a traffic violation.

■ Alternatively, the State argues that Officer Giordano had reasonable suspicion that Rhodes was operating a vehicle while intoxicated. An officer may conduct a brief investigative stop if the officer has

"reasonable suspicion that the person detained is involved in criminal activity." *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003).

> When making a reasonable suspicion determination, reviewing courts examine the "totality of the circumstances" of the case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. The reasonable suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. We review the trial court's ultimate determination regarding reasonable suspicion *de novo*.

*Moultry v. State*, 808 N.E.2d 168, 171 (Ind. Ct.App.2004) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)) (citations omitted).

■ A tip from a "concerned citizen" is often regarded as more reliable than a tip from a "professional informant." *Kellems v. State*, 842 N.E.2d 352, 356 (Ind. 2006), *reh'g granted on other grounds*. In some cases, a tip from a concerned citizen is alone sufficient to establish reasonable suspicion. *Id.* at 355. However, a tip from a concerned citizen does not always establish reasonable suspicion. *Id.* The test in all cases is the totality of the circumstances, and other factors, such as an officer's corroboration of the tip, remain relevant. *Id.* at 356.

In Rhodes's case, the record is vague as to what exactly St. John told Officer Giordano. Notably, there was no evidence that St. John described Rhodes or his vehicle. The record reflects that at least one other person—Tinsel—left Last Chance Wreckers after St. John called Officer Giordano. Thus, assuming that St. John's tip was sufficient to establish reasonable suspicion that *someone* was operating while intoxicated, there is no evidence that Officer Giordano had any basis on which to conclude that that someone was Rhodes. *Cf. id.* (holding that traffic stop was supported by reasonable suspicion because a concerned citizen told police that defendant was intoxicated and provided a description of the vehicle, its license plate number, the name of the driver, and the direction in which he was driving). Therefore, we conclude that the trial court did not err by determining that Officer Giordano lacked reasonable suspicion to stop Rhodes, and we affirm the trial court's ruling.

Affirmed.

NAJAM, J., and ROBB, C.J., concur.