

FILED
Apr 08 2020, 12:32 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Farris, *Appellant-Defendant*, | April 8, 2020 |
| v. | Court of Appeals Case No. 19A-CR-2599 |
| | Appeal from the Tippecanoe Superior Court |
| State of Indiana, *Appellee-Plaintiff*. | The Honorable Steven P. Meyer, Judge |
| | Trial Court Cause No. 79D02-1801-F5-11 |

**Brown, Judge.**

[1] Timothy Farris appeals his convictions for resisting law enforcement as a class A misdemeanor, possession of marijuana and possession of paraphernalia as class B misdemeanors, and carrying a handgun without a license with a prior felony conviction as a level 5 felony. We affirm.

## *Facts and Procedural History*

[2] At approximately 1:30 p.m. on January 10, 2018, Lafayette Police Officer Khoury Elias, a member of the Street Crimes Unit, was parked on Romig Street in an unmarked vehicle just west of South 4th Street in Lafayette. Officer Elias observed Farris's vehicle traveling westbound on Romig Street in the area of 5th Street, which was approximately 275 feet before the intersection of Romig Street and South 4th Street. Farris pulled over from the travel lane to the side of the road without using his turn signal. A female exited Farris's car and met with a male. At that point, Farris was approximately 160 feet from South 4th Street and continued westbound on Romig Street towards South 4th Street. Officer Elias did not observe a turn signal on Farris's vehicle until it was almost at the intersection where it turned southbound on South 4th Street.[1]

[3] Officer Elias advised Lafayette Police Sergeant Adam Mellady, a supervisor of the Street Crimes Unit who was parked on 5th Street near New York, that he

---

[1] At the suppression hearing, Officer Elias testified: "The vehicle comes up to the intersection, and I don't recall if it was completely stopped or it activated its turn signal and was coming to a stop, but it was very near the intersection when I noticed that the turn – left-turn signal to go southbound 4th Street became activated." Transcript Volume II at 144. When asked what was the earliest that the turn signal was activated in terms of distance, Officer Elias answered: "Maybe a car's length or two." *Id.*

observed a vehicle failing to signal as it pulled off to the side of the road on Romig Street, a female exited the vehicle, and the vehicle failed to signal when it went back onto the road and failed to signal 200 feet prior to turning south on South 4th Street. Sergeant Mellady moved south on 5th Street, observed Farris's vehicle, and initiated a traffic stop on South 4th Street, which contains a southbound and a northbound lane and was a "fairly busy" road. Transcript Volume II at 74.

[4] Farris pulled over on South 4th Street in the southbound lane where there was not a stopping and standing lane.[2] Sergeant Mellady approached the passenger side of the vehicle, advised Farris why he was stopped, and requested his driver's license and insurance. Farris stated he did not activate his turn signal because he did not know what he was going to do. Farris provided his registration and driver's license but failed to provide proof of insurance. Sergeant Mellady asked Farris what he was doing in the area "just as casual conversation," and Farris said a female asked for a ride and he picked her up around 9th Street and dropped her off but did not know her name. *Id.* at 75.

[5] Sergeant Mellady returned to his vehicle and entered Farris's information into the local records management system. At some point, Officer Elias and Officer Price arrived at the scene. When Sergeant Mellady returned to Farris's vehicle,

---

[2] During the suppression hearing, the prosecutor asked Sergeant Mellady: "The shoulder of the road, is it – is there like a boundary where there's kind of like a stopping and standing lane?" Transcript Volume II at 73. Sergeant Mellady answered: "I would say no. There's no white boundary line." *Id.* He also added: "That is near the curb." *Id.*

Farris was unable to provide proof of insurance and was using his phone. Sergeant Mellady issued a citation to Farris for failing to signal a turn and operating a vehicle without financial responsibility.

Sergeant Mellady asked Farris to exit the vehicle because he could not provide insurance information. Farris refused, and Sergeant Mellady asked him multiple times to exit the vehicle. Farris braced himself inside the vehicle and kept his right hand on the shift selector, which concerned Sergeant Mellady, who then asked Farris to move his hand away from the shift selector, and Farris initially refused but eventually complied. Farris became argumentative and "did a pat on the outside pocket of his jacket," stuck his hand into the jacket, removed his hand from the jacket, removed the jacket, and threw it in the backseat where there was a fairly aggressive pit bull. Transcript Volume III at 94. Officer Price grabbed Farris's left arm, and Farris pulled away from the officers. Officers Elias and Price pulled him from the vehicle and arrested him. The officers impounded the vehicle due to Farris not having insurance and because another driver was not present. After animal control took possession of the pit bull, the officers inventoried the vehicle and discovered marijuana, a handgun in the pocket of the jacket Farris had thrown in the backseat, and a meth pipe near the driver's seat.

On January 12, 2008, the State charged Farris with Count I, carrying a handgun without a license as a class A misdemeanor; Count II, resisting law enforcement as a class A misdemeanor; Count III, possession of marijuana as a class B misdemeanor; Count IV, possession of paraphernalia as a class C

misdemeanor; and Count V, carrying a handgun without a license with a prior felony conviction as a level 5 felony.

[8] On August 18, 2019, Farris filed a motion to suppress "the stop and arrest" and asserted that the search was unreasonable, the police decided to search before the existence of probable cause, and the manner of the search was unreasonable. Appellant's Appendix Volume II at 110.

[9] At the hearing on the motion to suppress, when asked if he was "trained in terms of department policy about how to handle situations where a driver is stopped and is unable to prove to you that they have a valid insurance policy," Sergeant Mellady answered affirmatively. Transcript Volume II at 82. He testified: "[W]e currently train our officers that if insurance cannot be provided by the person operating the vehicle, that the vehicle is to be impounded so that we can maintain . . . safe vehicles operating on the street." *Id.* at 83. The court admitted the Lafayette Police Department Inventory Searches Policy.

[10] On August 27, 2019, the court entered a fourteen-page order denying Farris's motion to suppress. The court found the basis for the traffic stop was failure to signal a left turn at least 200 feet in advance of the intersection of South 4th Street and Romig Street, contrary to Ind. Code § 9-21-8-25. The court stated:

> Although Officer Elias was unable to testify exactly where Farris
> first entered the roadway on Romig Street, it was no later than
> South 5th Street. Thus, at a minimum, Farris had the distance
> between South 5th and 4th Streets to signal. This distance was
> measured by law enforcement to be 276 feet. Farris may argue
> he first pulled to the side of the road to let out his passenger, and
> the distance from *that* point to South 4th Street is shorter.

However, that is not the standard. [*State v. Rhodes*, 950 N.E.2d 1261 (Ind. Ct. App. 2011)] requires only that the State show that compliance is possible from the point where the road was first entered. [] Moreover, Farris did not attempt to comply with the signaling requirement until he was at, or very near, [the] intersection of 4th and Romig.

Appellant's Appendix Volume II at 139-140. The court also found the search was valid as an inventory search conducted for purposes of impounding the vehicle consistent with, and pursuant to, written department policy. It found the traffic stop occurred on South 4th Street, a main thoroughfare, "the point where Farris's car came to rest, consists only of two lanes of travel, one in each direction," "the road does not contain a marked shoulder for standing or parked vehicles," and "[a]s such, it is reasonable for law enforcement to keep the side of the travel lane free of potential hazards." *Id.* at 142.

[11] At the jury trial, the prosecutor asked Sergeant Mellady if he was trained on his department's policy regarding the lack of proof of insurance during a traffic stop, and he answered: "It's not a policy, but I would say it's standard operating procedure, yes," which he described as "[w]hen an individual is stopped on a traffic stop and they don't have insurance for the vehicle, the vehicle is impounded." Transcript Volume III at 88. When asked if there was a reason it was standard operating procedure not to allow a vehicle that cannot be verified to be insured to be driven away, he answered there were liability issues in regards to the vehicle not being insured and possibly being involved in an accident while operating on a public street. He later testified "[w]e don't have a policy on impounding vehicles but we do have an inventory policy." *Id.* at 108.

He also stated that "[e]very vehicle that's impounded has to be inventoried" to protect the officers and the items inside the vehicle. *Id.* The court admitted the police department's inventory searches policy, and Sergeant Mellady testified he followed that policy. He testified the department uses an official form to inventory a vehicle and one was completed for Farris's vehicle.

[12] The jury found Farris guilty as charged. The court found Count I merged into Count V, vacated the judgment of conviction entered under Count I, and sentenced him to an aggregate sentence of five years and 182 days with four years and 182 days to be executed at the Department of Correction, which would include two years with the Tippecanoe County Community Corrections at a level to be determined by Community Corrections, and with one year suspended to supervised probation.

### Discussion

[13] Although Farris originally moved to suppress the evidence, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). The ultimate determination of the constitutionality of a search or seizure is a question of law that we consider *de novo*. *Id.* In ruling on admissibility

following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Id.* If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette*, 14 N.E.3d at 40 n.1.

[14] Farris challenges the traffic stop and the impoundment of his vehicle and mentions the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[3]

[15] The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. If the search is conducted without a warrant, the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies. *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016).

[16] Although its text mirrors the Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). "When a defendant raises a Section 11

---

[3] The State argues that Farris waived the issue of a violation of the Indiana Constitution because he presented no argument or separate analysis under the Indiana Constitution to the trial court. Even assuming Farris did not waive this argument, we cannot say that reversal is warranted.

claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). Generally, "[w]e consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

A.    *The Traffic Stop*

Farris asserts he did not violate Ind. Code § 9-21-8-25, which governs use of turn signals. While he "does not dispute that he did not signal continuously for two hundred feet," he "contends that it was impossible for him to do so." Appellant's Brief at 15. Specifically, he asserts that, while 275 feet separated the point at which he turned onto Romig Street and where he turned on South 4th, he pulled to the curb along the way to let out a female and at that point was 160 feet from South 4th Street. He contends that, because compliance was impossible, the officers had no reasonable basis on which to stop his vehicle and any and all evidence seized from the stop should have been suppressed. The State argues the traffic stop was proper because Farris committed multiple infractions and the stop was reasonable.

The Indiana Supreme Court has held: "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer

probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). *See also Marshall v. State*, 117 N.E.3d 1254, 1259 (Ind. 2019) (holding that, under the Fourth Amendment, "the stopping officer must be able to articulate some facts that provide a particularized and objective basis for believing a traffic violation occurred"), *cert. denied*, 140 S. Ct. 113 (2019); *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006) (holding that police officers "may stop a vehicle when they observe minor traffic violations" and "[a] traffic violation, however minor, creates probable cause to stop the driver of the vehicle").

[19] In addressing whether Article 1, Section 11 of the Indiana Constitution prohibits pretextual stops, the Indiana Supreme Court has held:

> We find nothing unreasonable in permitting an officer, who may have knowledge or suspicion of unrelated criminal activity by the motorist, to nevertheless respond to an observed traffic violation. It is likewise not unreasonable for a motorist who commits a traffic law violation to be subject to accountability for said violation even if the officer may have an ulterior motive of furthering an unrelated criminal investigation.

*Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001).

[20] Ind. Code § 9-21-8-25 provides: "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." Ind. Code § 9-21-8-24 provides:

> A person may not:
>
> > (1) slow down or stop a vehicle;

(2) turn a vehicle from a direct course upon a highway;[4] or

(3) change from one (1) traffic lane to another;

unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.

[21] The record reveals that Officer Elias observed Farris travel westbound and pull over from the travel lane to the side of the road without using his turn signal, drop off a female, and continue westbound on Romig Street towards the "fairly busy" South 4th Street without using a turn signal. Transcript Volume II at 74. He did not observe any turn signal on Farris's vehicle until it was almost at the intersection where it turned southbound on South 4th Street. Officer Elias advised Sergeant Mellady of his observations with regard to Farris.

[22] As for Farris's argument that it was impossible to comply with Ind. Code § 9-21-8-25, he concedes that 275 feet separated the point at which he turned onto Romig Street and where he turned on South 4th. He pulled to the curb without signaling his intent to do so, and then pulled away from the curb without signaling his intent to do so or to turn left at the intersection. Further, he states

[4] Ind. Code § 9-13-2-73 provides: "'Highway' or 'street' means the entire width between the boundary lines of every publicly maintained way when any part of the way is open to the use of the public for purposes of vehicular travel in Indiana."

he was 160 feet from South 4th Street at the point where he pulled to the curb, and Officer Elias testified he did not observe any turn signal on Farris's vehicle until it was almost at the intersection where it turned southbound on South 4th Street. We conclude that the traffic stop did not amount to an unconstitutional seizure under the Fourth Amendment. *See Datzek v. State*, 838 N.E.2d 1149, 1155 (Ind. Ct. App. 2005) (rejecting the defendant's arguments that Ind. Code § 9-21-8-25 would not be applicable to him because it did not mention turning from a parking lot and because it would be impossible for him to use his turn signal for 200 feet before turning from a parking lot, holding that to limit the application of the statute as argued by the defendant would run counter to the terms of the statute and the policy to facilitate safe automobile traffic, and noting that "the statute does not require that a person use his turn signal for 200 feet before turning in order for it to be applicable" and "[i]nstead, it requires that a person use his turn signal for 'not less than the last' 200 feet traveled"), *reh'g denied*, *trans. denied*.

[23] As for the Indiana Constitution and the degree of concern, suspicion, or knowledge that a violation had occurred, the record reveals that Farris failed to signal when he pulled over, failed to signal when he proceeded after stopping, and failed to signal until he was a car length or two from South 4th Street. Regarding the degree of intrusion, we find that the initial traffic stop for failing to signal amounted to a small intrusion on Farris's ordinary activities. With respect to law enforcement needs, we acknowledge that law enforcement has a legitimate, if not a compelling, need to enforce traffic safety laws. Under the

totality of the circumstances, we conclude the seizure was reasonable and did not violate Article 1, Section 11 of the Indiana Constitution.[5]

B.    *Impoundment*

Farris argues the impoundment of his vehicle was not authorized because the State failed to demonstrate an impoundment policy. He asserts there was no indication his vehicle posed a danger or testimony the vehicle could not have been left on the side of the street. The State argues that the decision to impound the vehicle was proper as it was authorized by statute and under the police's discretionary community-caretaking function.

The Indiana Supreme Court has held the inventory search is an exception to the warrant requirement that "serves an administrative, not investigatory, purpose—because when police lawfully impound a vehicle, they must also perform an administrative inventory search to document the vehicle's contents

---

[5] To the extent Farris cites *State v. Rhodes*, we note in that case the State was appealing a negative judgment and the Court observed that we will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. 950 N.E.2d 1261, 1265 (Ind. Ct. App. 2011). The Court in *Rhodes* observed that the police officer who conducted a traffic stop "estimated that Rhodes turned his signal on about 150 feet before turning, but the record [did] not reflect whether there was at least 200 feet between the place where he turned onto Market Street and the place where he turned onto the Angie's List property." *Id.* The Court agreed that the State failed to show that compliance with the statute was possible under the circumstances. *Id.* The Court also held that, "if the trial court credited Rhodes's testimony, once the officer turned on his emergency lights, Rhodes was required to pull over immediately." *Id.* The Court concluded that it could not say that the trial court erred by concluding that Rhodes was not properly stopped for a traffic violation. *Id.* Unlike *Rhodes*, Farris acknowledges that 275 feet separated the point at which he turned onto Romig Street and where he turned on South 4th. Further, Farris failed to signal when he pulled over to drop off the female or continued on Romig Street. Rather, he activated his turn signal only when he was almost at the intersection where he turned on South 4th Street and did not do so in response to the initiation of a traffic stop. We find *Rhodes* to be distinguishable.

to preserve them for the owner and protect themselves against claims of lost or stolen property." *Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016). "Consequently, proper impoundment is the 'threshold question' to valid inventory search." *Id.* (quoting *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993)). As with any warrantless search or seizure, the State bears the burden of proving reasonableness. *Id.*

[26] The Court has held:

> Impoundment is reasonable if it is authorized either by statute or the police's discretionary community-caretaking function. [*Fair*, 627 N.E.2d at 431-432]. Impoundment pursuant to a statute is necessarily reasonable because the Legislature has deemed that citizens' privacy interests in their cars yield to State interests in those circumstances, making police inventorying a necessary collateral administrative function. Discretionary impoundment, by contrast, is an exercise of the police community-caretaking function in order to protect the car and community from hazards. Discretionary impoundments, too, may be reasonable—but as we recognized in *Fair*, and more recently in *Taylor* [*v. State*, 842 N.E.2d 327 (Ind. 2006)], they are vulnerable to constitutional reasonableness challenges because of their potential for misuse as pretext for warrantless investigative searches under the guise of inventory. *See Fair*, 627 N.E.2d at 435; *Taylor*, 842 N.E.2d at 331-33. Unless the impoundment is proper, then, an inventory search is per se unreasonable and any contraband found during the search is inadmissible "poisoned fruit."

*Id.* at 375. To prove a valid inventory search under the community-caretaking function, the State must demonstrate the following: (1) "the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing," and (2) "the decision to combat that threat by impoundment was in keeping with established

departmental routine or regulation." *Taylor v. State*, 842 N.E.2d 327, 331 (Ind. 2006) (quoting *Fair*, 627 N.E.2d at 433).

[27] Sergeant Mellady testified that he initiated a traffic stop on South 4th Street, which contains a southbound and a northbound lane. He stated that "given that time of day, school going to be letting out shortly thereafter, it stays fairly busy." Transcript Volume II at 74. He also testified Farris pulled over on South 4th Street where there was not a stopping and standing lane. Under these circumstances, we conclude that the location of the car posed a threat or harm to the community and its removal was consistent with objective standards of sound policing. Based upon Sergeant Mellady's testimony, including that officers are trained to impound vehicles if the operating person cannot provide proof of insurance in order to maintain safe vehicles operating on the street and that impoundment was standard operating procedure, the impoundment was in keeping with established department routine regulation, satisfying the second part of the community-caretaking function test.

[28] In the alternative, as the State argues, Sergeant Mellady was authorized by statute to remove the car. Ind. Code § 9-21-16-3 is titled "Removal of vehicle from traveled portion of highway" and provides:

> Whenever a police officer finds a vehicle standing upon a highway in violation of this chapter, the officer may require the person driving the vehicle or other person in charge of the vehicle to move the vehicle to a position off the paved, improved, or main traveled part of the highway. If:

> (1) a person directed by an officer fails or refuses to move the vehicle; or
>
> (2) the vehicle is unattended;
>
> the officer may provide for the removal of the vehicle to the nearest available garage or other place of safety.

[29] Because Farris was not able to move the car himself, Sergeant Mellady was statutorily authorized to remove the vehicle. Because the impoundment was proper, the inventory search was a valid exception to the warrant requirement of the Fourth Amendment. *See Jones v. State*, 856 N.E.2d 758, 762-763 (Ind. Ct. App. 2006) (holding that the location of the car on the paved portion of the highway posed a threat or harm to the community, its removal was consistent with objective standards of sound policing, the impoundment was in keeping with established department routine or regulation, and the officer was authorized by statute to remove the car under Ind. Code § 9-21-16-3, and because the impoundment was proper, the inventory search was a valid exception to the warrant requirement of the Fourth Amendment), *trans. denied*. Further, for the reasons discussed above, the inventory search was proper under the Indiana Constitution.

[30] For the foregoing reasons, we affirm Farris's convictions.

[31] Affirmed.

Najam, J., and Kirsch, J. concur.