**FILED**

Apr 08 2020, 12:51 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Paula M. Sauer | Curtis T. Hill, Jr. |
| Danville, Indiana | Attorney General of Indiana |
| | |
| | Tiffany A. McCoy |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alexander Regino Quintanilla, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 8, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-2779 <br><br> Appeal from the Hendricks <br> Superior Court <br><br> The Honorable Mark A. Smith, <br> Judge <br><br> Trial Court Cause No. <br> 32D04-1807-F2-14 |

**Najam, Judge.**

## Statement of the Case

[1] Alexander Regino Quintanilla appeals his conviction for dealing in methamphetamine, as a Level 2 felony, and his ensuing sentence. Quintanilla raises two issues for our review, which we restate as the following three issues:

1. Whether Indiana's statutory requirement to use a turn signal prior to turning does not apply where it might not be clear to other motorists where specifically the driver will turn.

2. Whether the trial court abused its discretion when it relied on the substantial amount of methamphetamine—ten pounds—found in Quintanilla's vehicle when sentencing him for an already enhanced Level 2 felony offense.

3. Whether Quintanilla's twenty-year sentence, with ten years suspended, is inappropriate in light of the nature of the offense and Quintanilla's character.

We affirm.

## Facts and Procedural History

On July 15, 2018, officers with the Hendricks County Sheriff's Department received a tip that Quintanilla would be traveling through Hendricks County with narcotics in his vehicle. Officers in multiple vehicles followed Quintanilla westbound on U.S. 36 in Avon. As Quintanilla passed a Target department store, he failed to use his left turn signal continuously as he made a "rapid lane change" into a turn lane and then turned left onto Gable Drive. Tr. Vol. 2 at 37. Multiple officers saw the traffic infraction, and Hendricks County Sheriff's Deputy Dennis Sanchez initiated a traffic stop.

During the stop, a K-9 unit indicated the presence of contraband inside Quintanilla's vehicle. Officers then searched the vehicle and seized

approximately ten pounds of methamphetamine, distributed over ten one-pound bags. Officers arrested Quintanilla.

[5] The State charged Quintanilla with dealing in methamphetamine as a Level 2 felony because "the amount of the drug involved" was "at least ten (10) grams," or about two-hundredths of one pound. Ind. Code § 35-48-4-1.1(e)(1) (2019). Quintanilla moved to suppress the ten pounds of methamphetamine seized from the traffic stop on the ground that, had he used a left turn signal, it would have been ambiguous to other motorists if he were turning left onto Gable Drive or instead into the parking lot of a nearby business. The trial court denied the motion. Quintanilla renewed his objection to the admissibility of the evidence at his ensuing bench trial, which the trial court overruled. The court then found Quintanilla guilty of dealing in methamphetamine, as a Level 2 felony.

[6] Thereafter, the court sentenced Quintanilla as follows:

> [T]here is some prior criminal history but not significant enough where I would consider it an aggravating circumstance. Both offenses appear to be minor. I do think it is an aggravating circumstance that he was arrested while this case was pending for a new criminal offense. I also find that *the amount of the drug was a—obviously ten pounds is way over[,] above[,] and beyond what the State had to prove* in order to meet its burden. . . . [I]n addition to that I have considered the fact that the Defendant . . . did score low . . . on the risk assessment. Having considered those things the Court . . . hereby imposes a sentence of twenty years in the Department of Correction[]. Ten of those years will be executed, ten . . . will be suspended to probation.

*Id.* at 155-56 (emphasis added).  This appeal ensued.

# Discussion and Decision

## *Issue One:  Admission of the Methamphetamine*

On appeal, Quintanilla first asserts that officers violated his state and federal constitutional rights when they stopped his vehicle.  As we have explained:

> [The defendant's] arguments that police violated his Fourth Amendment and Article 1, Section 11 rights raise questions of law we review *de novo*.  As the United States Supreme Court has explained with respect to the Fourth Amendment, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," while "findings of historical fact" underlying those legal determinations are reviewed "only for clear error."  *Ornelas v. United States*, 517 U.S. 690, 699 (1996).  The Indiana Supreme Court applies the same standard under Article 1, Section 11.  *E.g.*, *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014).  In other words, we review whether reasonable suspicion or probable cause exists "under a standard 'similar to other sufficiency issues'—whether, without reweighing the evidence, there is 'substantial evidence of probative value that supports the trial court's decision.'"  *Id.* (quoting *State v. Richardson*, 927 N.E.2d 379, 385 (Ind. 2010)).

*Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017) (some citations and quotation marks omitted), *trans. denied*.

An officer's observation of a traffic infraction is a well-established basis for a traffic stop under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.  *E.g.*, *Doctor v. State*, 57 N.E.3d 846, 853, 856 (Ind. Ct. App. 2016).  And Indiana Code

Section 9-21-8-25 provides, in relevant part, that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes."[1] There is no dispute that Quintanilla did not signal a left turn continuously for at least 200 feet prior to turning.

[9] Nonetheless, Quintanilla asserts that the statute does not apply here. In particular, Quintanilla asserts that using the left turn signal as required would not have clearly indicated to other motorists where specifically Quintanilla intended to turn—namely, whether Quintanilla intended to turn onto Gable Drive or into the parking lot of a nearby business.

[10] In support of that argument, Quintanilla relies on this Court's opinion in *State v. Rhodes*, 950 N.E.2d 1261 (Ind. Ct. App. 2011). In *Rhodes*, the trial court granted the defendant's motion to suppress, finding that the facts did not support the officer's initiation of a traffic stop for the defendant's purported failure to signal a turn. On the State's appeal from a negative judgment, we recited the defendant's arguments in support of the trial court's judgment and held as follows:

> [The defendant] notes that the trial court questioned why he would have turned . . . unless [the officer] had already initiated a traffic stop. He also notes that the State did not show that it was

---

[1] For speed zones of at least fifty miles per hour, the signal shall be given continuously for at least 300 feet. I.C. § 9-21-8-25. But there is no dispute that U.S. 36 at the location in question was a forty-five mile-per-hour speed zone.

possible for him to comply with the statute. The record is clear that [the location where the defendant turned off the street] is across the street from [where he had originally turned onto the street]. [The officer] estimated that [the defendant] turned his signal on about 150 feet before turning, but the record does not reflect whether there was at least 200 feet between the place where he turned onto [the street] and the place where he turned [off of the street]. We agree that the State failed to show that compliance with the statute was possible under the circumstances. In addition, if the trial court credited [the defendant's] testimony, once the officer turned on his emergency lights [on the street before the defendant turned], [the defendant] was required to pull over immediately. *See* Ind. Code § 9-21-8-35 (providing that drivers must "immediately" yield to an emergency vehicle when its siren or emergency lights are activated). Thus, we cannot say that the trial court erred by concluding that [the defendant] was not properly stopped for a traffic violation.

*Id.* at 1265.

[11] Quintanilla reads *Rhodes* to stand for the proposition that, where the continuous use of a turn signal would not unambiguously tell other motorists where the driver is turning, compliance with the turn-signal statute is not possible. But *Rhodes* does not stand for that proposition. *Rhodes* stands for the proposition that the trial court is the finder of fact, that the State's burden on appeal from a negative judgment is formidable, and that complying with the turn-signal statute might not be possible when a driver is on a street for less than 200 feet before turning off that same street. None of those circumstances are present here.

[12] Moreover, Quintanilla's argument that the turn-signal statute applies only when using the turn signal will unambiguously inform other motorists where specifically the driver intends to turn would create an exception that swallows the rule. In any municipality of even slight population density, driveways, parking lots, cross-streets, and alleyways are often within 200 feet of each other. To hold that the turn-signal statute does not apply under such circumstances would amount to an exemption from the turn-signal statute at many locations where it is required and beneficial. Our legislature did not intend such an absurd result. The statute requires a continuous signal to inform other motorists of a driver's intent to turn—most motorists will figure out where the driver is turning based on where the driver actually slows down before the turn, not from the use of the signal alone.

[13] Accordingly, the statute applied to Quintanilla's left turn, regardless of whether his use of the signal would have clearly communicated that he intended to turn onto Gable Drive or into the nearby business parking lot. Again, there is no dispute that Quintanilla failed to use the turn signal continuously. Accordingly, Officer Sanchez did not violate Quintanilla's state or federal constitutional rights when the officer stopped Quintanilla for an observed traffic infraction, and we affirm the trial court's admission of the ten pounds of seized methamphetamine.

### *Issue Two: Sentencing Discretion*

[14] Quintanilla next asserts that the trial court abused its discretion when it sentenced him. Sentencing decisions lie within the sound discretion of the trial

court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007)).

The sentencing range for a Level 2 felony is ten to thirty years, with an advisory sentence of seventeen and one-half years. I.C. § 35-50-2-4.5. In sentencing Quintanilla to a term of twenty years, with ten years suspended, the trial court found the substantial amount of methamphetamine seized from Quintanilla's vehicle to be an aggravating circumstance along with Quintanilla's alleged commission of a new criminal offense during the pendency of these

proceedings.[2] The trial court did not give aggravating weight to Quintanilla's criminal history, and the court gave some mitigating weight to Quintanilla's low risk to reoffend.

[17] Quintanilla asserts that the trial court abused its discretion when it sentenced him because, in finding the ten pounds of methamphetamine to be an aggravating circumstance, the court used an element of the Level 2 felony offense as an aggravator. Again, the offense for which Quintanilla was charged and convicted required the State to show that "the amount of the drug involved" was "at least ten (10) grams." I.C. § 35-48-4-1.1(e)(1). The State's evidence that Quintanilla possessed ten pounds of methamphetamine cleared that burden more than 450 times over.

[18] In support of his argument on this issue, Quintanilla relies on *Smith v. State*, a 2003 opinion in which a panel of this Court held that the trial court abused its discretion when it used the defendant's possession of eighty-five grams of cocaine as a sentencing aggravator because the degree of the offense had already been elevated based on the defendant's possession of three or more grams. 780 N.E.2d 1214, 1219 (Ind. Ct. App. 2003), *trans. denied*. That holding in *Smith* has been followed in only one other published opinion from our

---

[2] Quintanilla states that he is challenging the trial court's use of his arrest as an aggravator, but Quintanilla's precise argument here is not that the trial court erred in finding this aggravator but only that "it is more logical to address it as part of an inquiry of his character" under Indiana Appellate Rule 7(B). Appellant's Br. at 28. Accordingly, we conclude that Quintanilla does not challenge on appeal the trial court's finding that his arrest during the instant proceedings is an aggravating circumstance.

Court.[3] *See Donnegan v. State*, 809 N.E.2d 966, 978 (Ind. Ct. App. 2004), *trans. denied*. And our similar holding in *Donnegan* has not been relied upon in any subsequent and factually comparable published Indiana appellate opinions.

[19] We conclude that *Smith* and *Donnegan* have been superseded on this issue. These opinions predate the General Assembly's substantial overhaul of our criminal sentencing statutes in 2005. *See Anglemyer*, 868 N.E.2d at 487-88. The very notion of an "enhanced" sentence has been diluted by the 2005 sentencing revisions, under which our trial courts have broad discretion to impose a sentence anywhere within the applicable statutory range. Under this statutory regime, our appellate courts have routinely deferred to our trial courts' assessments of particularized facts in crafting appropriate sentences. *E.g.*, *Sorenson v. State*, 133 N.E.3d 717, 729 (Ind. Ct. App. 2019) ("Our trial courts are broadly authorized to tailor sentences to the facts and circumstances before them."), *trans. denied*.

[20] Further, and significantly, our current sentencing statute expressly states that, "[i]n determining what sentence to impose for a crime, the court may consider" as an aggravating circumstance that the "harm . . . suffered by the victim of an offense was: (A) significant; and (B) *greater than the elements necessary to prove the*

---

[3] In a 2004 Indiana Supreme Court opinion, the defendant relied on this holding from *Smith*, but rather than challenge the merits of that argument the State conceded it and proceeded to argue harmless error. Our Supreme Court explicitly skipped an analysis on the merits of the defendant's argument because of the State's position and instead assessed the defendant's sentence under Indiana Appellate Rule 7(B). *Merlington v. State*, 814 N.E.2d 269, 272-73 (Ind. 2004).

*commission of the offense.*"  I.C. § 35-38-1-7.1(a)(1) (emphasis added); *cf.* I.C. § 35-38-1-7.1 (2003) (containing no similar language).  We think that language applies here, where the extraordinary quantity of the drugs seized indicates the degree of harm the dealing and dissemination of those drugs would inflict upon the community.  Finally, we note that the enumerated sentencing factors "do not limit the matters that the court may consider in determining the sentence."  I.C. § 35-38-1-7.1(c).

[21]  While the Indiana Supreme Court has not expressly disapproved of the holdings in *Smith* or *Donnegan*, other holdings from the Court confirm that we should defer to the trial court's consideration of the particular amount of drugs seized here.  For example, in *Hamilton v. State*, our Supreme Court, relying on prior case law, reiterated that a trial court does not abuse its discretion in finding a victim's "particularly tender years" to be an aggravating circumstance even though the degree of the felony offense for child molesting had already been elevated based on the victim being less than twelve years of age.  955 N.E.3d 723, 727 (Ind. 2011).

[22]  In sum, our trial courts have broad discretion in sentencing defendants based on the actual and specific facts of the offenses, and our trial courts may consider the degree to which the amount of drugs actually in the defendant's possession is greater than the statutory threshold required to prove the charged offense.  That is what the trial court here did.  The court did not abuse its discretion in sentencing Quintanilla.

## *Issue Three:  Indiana Appellate Rule 7(B)*

[23]     Last, Quintanilla asserts that his twenty-year sentence, with ten years suspended, for dealing ten pounds of methamphetamine is inappropriate in light of the nature of the offense and his character.  As our Supreme Court has made clear:

> The Indiana Constitution authorizes appellate review and revision of a trial court's sentencing decision.  Ind. Const. art. 7, §§ 4, 6; *Serino v. State*, 798 N.E.2d 852, 856 (Ind. 2003).  This authority is implemented through Indiana Appellate Rule 7(B), which permits an appellate court to revise a sentence if, after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender.  *Serino*, 798 N.E.2d at 856.  The principal role of such review is to attempt to leaven the outliers.  *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).  The burden is on the defendant to persuade the reviewing court that the sentence is inappropriate.  *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

*Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018) (per curiam).

[24]     Further:

> Indiana Appellate Rule 7(B) is a "rare" avenue for appellate relief that is reserved "for exceptional cases."  *Livingston v. State*, 113 N.E.3d 611, 612-13 (Ind. 2018) (per curiam).  Even with Rule 7(B), "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference."  *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015) (quoting *Cardwell*, 895 N.E.2d at 1222).  "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by

restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Id.* Absent such a "sufficiently compelling" evidentiary basis, we will not "override the decision of . . . the trial court." *Id.*

*Sorenson*, 133 N.E.2d at 728 (alteration and omission original to *Sorenson*).

[25] According to Quintanilla, there was nothing about his dealing in methamphetamine offense that is not already accounted for by the 17.5-year advisory sentence for the Level 2 felony. He further asserts that his sentence is inappropriate in light of his character because he has lived a mostly law-abiding life; the fact that he was arrested while the instant case was pending, without more, is not significant; while he did not plead guilty, he did waive his right to a jury trial, for which he should receive some mitigating credit; he had a low recidivism score; and, he continues, "[i]t does not appear that the trial court considered any less restrictive, alternative placement programs . . . ." Appellant's Br. at 37.

[26] We cannot agree. The officers' testimony at trial demonstrated that Quintanilla was in possession of ten pounds of methamphetamine, which, like the trial court, we consider an extraordinary quantity, which is many times the amount needed to prove the charged offense. Further, he was alleged to have committed a new offense while on bond for the instant proceedings. While not a conviction, we agree with the trial court that this fact speaks poorly to Quintanilla's character, as does his prior criminal history, even though it is minor. And the trial court suspended half of Quintanilla's sentence to

probation. We see no sufficiently compelling evidence in this record to justify appellate relief under Rule 7(B) here. We affirm Quintanilla's sentence.

## Conclusion

[27] In sum, officers did not violate Quintanilla's constitutional rights when they stopped him for a traffic infraction. Indiana's turn-signal statute required Quintanilla to signal his turn continuously for at least 200 feet, which he does not dispute he did not do. We therefore affirm Quintanilla's conviction. We also conclude that the trial court did not exceed its authority when it considered the extraordinary quantity of drugs in Quintanilla's possession when he was arrested, and Quintanilla's sentence is not inappropriate. We therefore also affirm his sentence.

[28] Affirmed.

Kirsch, J., and Brown, J., concur.