

FILED

Feb 24 2017, 9:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Debra S. Andry
Lawrence County Public Defender
Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Public Defender
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Deborah S. Pridemore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 24, 2017

Court of Appeals Case No.
47A01-1607-CR-1652

Appeal from the Lawrence
Superior Court

The Honorable William G. Sleva,
Judge

Trial Court Cause No.
47D02-1512-F6-1496

**Najam, Judge.**

## Statement of the Case

[1] Deborah S. Pridemore brings this interlocutory appeal from the trial court's
denial of her motion to suppress evidence seized during a traffic stop. On

appeal, she raises one issue for our review, namely, whether law enforcement officers had reasonable suspicion to initiate the traffic stop. We affirm.

## Facts and Procedural History

[2] On December 22, 2015, Officer Anthony Wray of the narcotics division of the Bedford Police Department spoke with an anonymous telephone caller who informed him that the caller "was receiving texts" from Pridemore about dealing methamphetamine to the caller. Tr. at 11. Officer Wray instructed the anonymous caller to arrange a deal with Pridemore.

[3] Officer Wray had not previously worked with that anonymous caller, although Officer Wray was aware of numerous calls on the police tip line over the past several months that had informed police that Pridemore was involved in drug-related activity. The information the anonymous caller provided to the police on December 22 matched the information from the calls on the police tip line over the last several months. The December 22 anonymous caller described Pridemore's vehicle, a dark blue Oldsmobile Alero, and knew where Pridemore lived.

[4] Officer Wray had already conducted a background check on Pridemore and knew where she lived and that she had prior convictions which included possession of a controlled substance. After asking the December 22 anonymous caller to arrange the drug deal with Pridemore, Officer Wray and Officer Chris Roberts each drove separately to Pridemore's residence and confirmed that Pridemore's vehicle was still there. While Office Wray was observing

Pridemore's home and vehicle, he received another call from the anonymous caller that predicted that Pridemore would be leaving her home within the next two minutes. About thirty seconds later, Pridemore left her residence and pulled out of her driveway. The anonymous caller also predicted the direction in which Pridemore would drive. Specifically, the caller stated that Pridemore would drive south towards the Mitchell area, off of West U.S. 50. Officer Wray followed Pridemore as she drove in the direction the caller had indicated.

[5] At the area where Mitchell Road meets Sandpit Road, Mitchell Road is a four lane, two way road; it consists of two lanes heading southbound and two lanes heading northbound. There is a double yellow line separating the north and south bound lanes. There is also a small "median or division" in between the two yellow lines that is one to two feet wide. *Id*. at 14-15. Around the area of Mitchell and Sandpit Roads, Officer Wray observed Pridemore's vehicle cross over the yellow line separating the southbound lane from the median. Specifically, he observed a "good portion of her front left tire" go into the median between the north- and southbound lanes. *Id*. at 15. However, he did not observe Pridemore cross the other yellow line and enter into the northbound lane.

[6] Officer Wray did not pull Pridemore's vehicle over at that time because he was working as a detective in an unmarked car and was not wearing a police uniform. Instead, Officer Wray radioed Officer David Booth of the Bedford Police Department who was on patrol that day in uniform and in a marked police vehicle. As part of the investigation of Pridemore, Officer Wray had

asked Officer Booth to set up at a location in the area of southbound State Road 37 and the river bridge, "just south of the city limits," to watch for a dark blue Oldsmobile Alero that was possibly involved in a drug case. *Id*. at 23. After observing Pridemore cross the center southbound yellow line, Officer Wray radioed Booth and informed him that the driver of the dark blue Oldsmobile Alero had just committed a traffic violation—specifically, driving "left of center"—and he asked Officer Booth to stop the vehicle. *Id*. When Officer Booth saw Pridemore's vehicle and Officer Wray's vehicle pass him, heading south on 37, Officer Booth pulled out onto State Road 37 and followed Pridemore's vehicle.

[7] Officer Booth pulled Pridemore over just north of the State Road 37-U.S. 50 junction, and he approached her driver's side window. Meanwhile, Officers Roberts and Wray had each also pulled up and stopped at the scene, and Officer Wray approached Pridemore's vehicle at the passenger's side window. Officer Booth requested Pridemore's driver's license and registration and, after she provided those to him, Officer Wray told Pridemore that he had received information indicating that "there [were] most likely drugs in [her] vehicle and it would be best for her to give them to [him] now." *Id*. at 11. Pridemore then removed from her bra a "corner baggie" containing a white substance, and she handed it to Officer Wray. *Id*. Based on his training and experience, Officer Wray believed that the baggie contained methamphetamine. Officer Wray immediately field tested the substance back at his car, and it tested positive for methamphetamine. Officer Wray then arrested Pridemore.

The State charged Pridemore with possession of methamphetamine, as a Level 6 felony, and possession of marijuana,[1] as a Class B misdemeanor. On February 23, 2016, Pridemore filed a motion to suppress the evidence found as a result of the search of her vehicle on December 22. Following an evidentiary hearing and briefing on that motion, the trial court denied the motion on May 16. This interlocutory appeal ensued.

## Discussion and Decision

Pridemore contends that the trial court erred when it denied her motion to suppress.

> The State has the burden to show that the measures it used to seize evidence were constitutional. *State v. Sitts*, 926 N.E.2d 1118, 1120 (Ind. Ct. App. 2010). Our standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*.

*Kroft v. State*, 992 N.E.2d 818, 820 (Ind. Ct. App. 2013).

Pridemore asserts that the Bedford police officers did not have reasonable suspicion to initiate their traffic stop of her, and, therefore, they violated her

---

[1] The record does not disclose when or how police discovered that Pridemore possessed marijuana.

Fourth Amendment rights.[2] The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV.

> Our jurisprudence reflects two types of police encounters that implicate Fourth Amendment protection: the investigatory stop and the custodial arrest. *Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013). An investigatory stop is generally brief in duration and is constitutionally permissible so long as the law enforcement officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The custodial arrest constitutes a greater restriction upon the subject's liberty and requires a commensurately greater justification: probable cause. *Clark*, 994 N.E.2d at 261.

*State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014).

[11] Here, the question is whether the police had reasonable suspicion to support a brief investigatory stop, i.e., a "*Terry* stop," of Pridemore's vehicle.

> When determining whether an officer had reasonable suspicion for a *Terry* stop, we consider whether "the totality of the circumstances" presented "a particularized and objective basis" for the officer's belief that the subject was engaged in criminal activity. *Sellmer* [*v. State*], 842 N.E.2d [358,] 360 [(Ind. 2006)] (internal citations omitted). If an officer observes a driver commit a traffic violation, he has probable cause—and thus also

---

[2] Pridemore does not raise an issue under Article 1, Section 11 of the Indiana Constitution.

the lesser included reasonable suspicion—to stop that driver. [*State v.*] *Quirk*, 842 N.E.2d [334,] 340 [(Ind. 2006)].

*Id*. Moreover, reasonable suspicion, as required for a traffic stop or an investigatory stop, can rest on a reasonable mistake of law. *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014).[3]

[12]    While the infraction in question here is often referred to as "driving left of center," those words do not appear in the statute. Rather, the statute requires that, "[u]pon all roadways of sufficient width, a vehicle *shall be driven upon the right half of the roadway*[,]" with some exceptions. Ind. Code § 9-21-8-2(a) (2015) (emphasis added). Failure to drive on the right half of the road without legal justification is a Class C traffic infraction. I.C. § 9-21-8-49. Officer Wray testified that he had witnessed Pridemore "cross left of center," meaning she crossed the southbound yellow line and into the median between the north- and southbound lanes, in violation of Section 9-21-8-29(a). Tr. at 15. Further, Pridemore presented no evidence to show that her driving outside the right-hand lane was justified under a statutory exception. Therefore, the State presented sufficient evidence to support the trial court's conclusion that Officers Booth and Wray had conducted a lawful traffic stop based on reasonable suspicion that Pridemore had committed a traffic violation by driving outside

---

[3] Thus, Pridemore is incorrect when she asserts that a mistake of law cannot justify a search. Appellant's Br. at 13, citing *Sitts*, 926 N.E.2d at 1120. To the extent *Sitts* and other Indiana cases have held that an officer's reasonable mistaken belief about the law cannot justify a search under the Fourth Amendment, they have been overruled by *Heien*. Regardless, as we hold below, there was no mistake of law in this case.

the right-hand lane.[4] *See Combs v. State*, 878 N.E.2d 1285, 1289 (Ind. Ct. App. 2008) (holding a traffic stop was justified under the Fourth Amendment where the evidence showed the police officer had a good faith belief that defendant had driven left of center).

[13] Nonetheless, Pridemore contends that this case is comparable to *State v. Sitts*, 926 N.E.2d 1118, 1121 (Ind. Ct. App. 2010), where we held that an officer did not have reasonable suspicion to justify a traffic stop when the motorist crossed only the center line between two adjacent southbound lanes. We noted that crossing a line between two lanes heading the same direction was not a violation of Indiana Code Section 9-21-8-2(a). *Id.* But, unlike the motorist in *Sitts*, Pridemore crossed the center line between opposite lanes of travel. And Pridemore cites no authority for her assertion that the statute only applies when a motorist crosses *into* the opposite lane of travel. Rather, the statute plainly states that "a vehicle shall be driven upon the right half of the roadway." *See, e.g.*, *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016) (noting that "[t]o discern [the legislature's] intent, we look first to the statutory language itself and give effect to the plain and ordinary meaning of statutory terms."). A motorist is not "upon the right half of the roadway" if she is driving in the median between

---

[4] Because we hold that the traffic stop was lawful due to the officer's observation of a traffic violation, we do not address the State's argument that the stop was also justified based on other evidence, such as the information provided by the anonymous caller.

two opposite lanes of travel. I.C. § 9-21-8-2(a). Accordingly, we affirm the trial court's denial of Pridemore's motion to suppress.

[14] Affirmed.

Bailey, J., and May, J., concur.