

FILED
Jul 26 2023, 8:56 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sarah Medlin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Robert Martin Yoke
Jodi Kathryn Stein
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Philip D. Hutson, Jr.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

July 26, 2023

Court of Appeals Case No.
22A-CR-2240

Interlocutory Appeal from the
Marion County Superior Court

The Honorable
Jennifer Harrison, Judge

The Honorable
Steven Rubick, Magistrate

Trial Court Cause No.
49D20-2106-F4-020153

**Opinion by Judge May**
Judges Riley and Bailey concur.

**May, Judge.**

Philip D. Hutson, Jr. ("Hutson") appeals the trial court's denial of his motion to suppress evidence found during a *Terry*[1] stop. Hutson raises two issues on appeal, which we restate as:

> Whether a police officer's stop of Hutson as he was walking along the shoulder of Interstate 465 ("I-465") and the subsequent seizure of Hutson's handgun violated his rights under either:
>
> 1. the Fourth Amendment to the United States Constitution, or
>
> 2. Article 1, section 11 of the Indiana Constitution.

We affirm.

## Facts and Procedural History[2]

Shortly before 2:00 a.m. on June 28, 2021, Trooper Scott Probasco of the Indiana State Police received a dispatch regarding an individual walking along I-465 near the 17-mile marker. Trooper Probasco responded to the area in his police car, and he encountered Hutson walking along the shoulder of the roadway. Trooper Probasco asked Hutson why he was walking on the interstate. Hutson said his car had run out of gas, and he was walking back to

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

[2] We heard oral argument in this case on June 15, 2023, at Trine University in Angola, Indiana. We thank Trine University's faculty and staff for their hospitality and the participants in Hoosier Boy's State for their attendance. We also commend counsel for their advocacy.

his vehicle. He was carrying a plastic container[3] and not wearing a shirt. Trooper Probasco saw what appeared to be the grip of a handgun sticking out of Hutson's waistband. Trooper Probasco asked Hutson if he had a handgun on him, and Hutson "started to appear nervous and asked if he was going to jail[.]" (Tr. Vol. II at 10.) Trooper Probasco asked Hutson to turn around and then handcuffed him. Trooper Probasco removed a .38 caliber Smith & Wesson handgun from Hutson's waistband and asked for Hutson's name and date of birth. Trooper Probasco then "ran Mr. Hutson through Indiana State Police dispatch." (*Id.*) While Trooper Probasco was waiting to hear the return from dispatch, Hutson admitted he had some past felony convictions. Trooper Probasco then read Hutson his rights pursuant to *Miranda*[4] and asked Hutson about his criminal history. Trooper Probasco transported Hutson to a nearby gas station and a "jail van" then took Hutson to the Marion County Jail. (*Id.* at 11.)

[3] On June 30, 2021, the State charged Hutson with Level 4 felony unlawful possession of a firearm by a serious violent felon.[5] On July 5, 2022, Hutson filed a motion to suppress the evidence found during Trooper Probasco's stop of him. Hutson asserted Trooper Probasco's actions violated his rights under both

---

[3] Trooper Probasco described the container as "a radiator—like a—like a coolant or radiator fluid . . . container." (Tr. Vol. II at 14.)

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), *reh'g denied*.

[5] Ind. Code § 35-47-4-5.

the Fourth Amendment of the United States Constitution and Article 1, section 11 of the Indiana Constitution.

[4] On July 11, 2022, the trial court held a hearing on Hutson's motion. Trooper Probasco testified at the hearing that he stopped Hutson because walking along I-465 is a traffic infraction. Trooper Probasco also explained that when he encounters someone walking along the interstate, pursuant to department policy, he will ask for the person's identification, place the person in handcuffs before transporting the person, and then drive the person to a location off the interstate. The parties submitted post-hearing briefs, and the trial court denied Hutson's motion to suppress on August 2, 2022. Hutson moved to certify the order for interlocutory appeal, and the trial court granted Hutson's motion. We accepted jurisdiction over the appeal on October 14, 2022.

## Discussion and Decision

[5] Hutson appeals the trial court's denial of his motion to suppress. Our standard of review in this situation is well-settled:

> We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant. We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence. When the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, however, it presents a question of law, and we address that question *de novo*.

*Rutledge v. State*, 28 N.E.3d 281, 287 (Ind. Ct. App. 2015) (internal citations omitted).

## 1. Fourth Amendment to the United States Constitution

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The Amendment protects citizens from search or seizure absent a warrant supported by probable cause." *Tigner v. State*, 142 N.E.3d 1064, 1068 (Ind. Ct. App. 2020). However, one exception to the warrant requirement is the *Terry* stop. *Glasgow v. State*, 99 N.E.3d 251, 257 (Ind. Ct. App. 2018). This exception "permits a police officer to stop and detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity 'may be afoot[,]' even if the officer lacks probable cause." *Parker v. State*, 697 N.E.2d 1265, 1267 (Ind. Ct. App. 1998) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)) (brackets in *Parker*).

### *1.1 Stop of Hutson*

Hutson initially contends Trooper Probasco's stop of him was improper under *Terry* because Hutson's "presence on the shoulder of I-465 was not evidence of criminal activity." (Appellant's Br. at 6.) The State counters that Trooper

Probasco constitutionally stopped Hutson when Trooper Probasco observed Hutson commit a Class C infraction by walking along the shoulder of I-465. "If an officer observes a driver commit a traffic violation, he has probable cause—and thus also the lesser included reasonable suspicion—to stop that driver." *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014). Trooper Probasco testified that along I-465 "[t]here are marked signs on the roadway stating no—no standing, parking, walking on the interstate[.]" (Tr. Vol. II at 19.) Indiana Code section 9-21-8-20 states:

> The Indiana department of transportation may by resolution or order entered in its minutes, and local authorities may by ordinance, with respect to any freeway or interstate highway system under their respective jurisdictions, prohibit the use of a highway by pedestrians, bicycles, or other nonmotorized traffic or by a person operating a motor driven cycle. The Indiana department of transportation or the local authority adopting a prohibiting regulation shall erect and maintain official signs on the freeway or interstate highway system on which the regulations are applicable. If signs are erected, a person may not disobey the restrictions stated on the signs.

105 IAC 9-1-2(12) explains: "Pedestrians, motorized bicycles, bicycles, and other nonmotorized traffic shall be prohibited from enumerated highways: … I-465[.]" Indiana Code section 9-21-8-49(a) provides that a person who violates Indiana Code section 9-21-8-20 commits a Class C infraction.

[8]     Hutson notes that Indiana Code section 9-21-17-13 states: "If a sidewalk is not available, a pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." However, the

traffic code differentiates between a "highway" and an "interstate highway." Indiana Code section 9-13-2-85 explains: "'Interstate highway' means a highway that is a part of the national system of interstate and defense highways (23 U.S.C. as in effect January 1, 1991)." Indiana Code 9-13-2-73 provides: "'Highway' or 'street' means the entire width between the boundary lines of every publicly maintained way when any part of the way is open to the use of the public for purposes of vehicular travel in Indiana. The term includes an alley in a city or town." Thus, while Indiana Code section 9-21-17-13 allows a pedestrian to walk along the shoulder of other roadways, it does not allow a pedestrian to walk along the shoulder of an interstate highway.

[9]     Hutson also emphasizes that he was walking along the shoulder of I-465 rather than in the traveling portion of the roadway, but this distinction is not significant. The United States Code's definition of "highway" includes "a portion of any interstate." 23 U.S.C. § 101(11)(c). Moreover, Indiana Code section 9-21-17-13 implicitly recognizes the shoulder as part of the street because it directs "a pedestrian walking along and upon a highway" to "walk only on a shoulder, as far as practicable from the edge of the roadway." Therefore, even though Hutson was walking along the shoulder of the interstate rather than in the middle of it, Trooper Probasco had the requisite reasonable suspicion to stop him for committing the traffic infraction of walking along the interstate. Based thereon, we conclude Trooper Probasco's stop of Hutson did

not violate Hutson's Fourth Amendment rights.[6] *See Pridemore v. State*, 71 N.E.3d 70, 74 (Ind. Ct. App. 2017) (holding officers conducted lawful traffic stop based on reasonable suspicion motorist committed a traffic infraction by driving outside the right-hand lane).

### 1.2 Seizure of Hutson's Gun

[10] Second, Hutson contends Trooper Probasco violated his Fourth Amendment rights when Trooper Probasco "handcuffed him and searched his person based solely on the belief that Hutson was armed and nervous." (Appellant's Br. at 9.) Hutson likens himself to the defendant in *Pinner v. State*, 74 N.E.3d 226 (Ind. 2017). In *Pinner*, our Indiana Supreme Court held a "bare boned tip" that an individual possessed a handgun and the individual's "rocking back and forth" and "wringing" his hands when questioned by police did not give rise to reasonable suspicion. *Id.* at 232. The Court explained that it is not per se illegal to possess a gun, and the officers did not have any reason to believe Pinner's possession of a gun was in violation of Indiana law. *Id.* The Court also noted many people will exhibit signs of nervousness, regardless of their actual guilt or innocence, when confronted by law enforcement. *Id.* at 233. Hutson points out that Trooper Probasco did not testify he feared for his safety

---

[6] In his reply brief, Hutson asserts that "[i]f walking on the shoulder of I-465 is an infraction, so too is 'stopping, standing, or parking,' leaving Hoosiers whose vehicles become disabled on I-465 with no permissible conduct." (Appellant's Reply Br. at 4.) However, if an officer tickets a motorist for stopping, standing, or parking on the shoulder of the interstate after the motorist's vehicle becomes disabled, then the motorist may raise necessity as an affirmative defense at trial. *See Toops v. State*, 643 N.E.2d 387, 389-90 (Ind. Ct. App. 1994) (holding defense of necessity is recognized in Indiana).

when he saw the grip of a handgun sticking out of Hutson's waistband. Hutson also notes he "made no attempt to hide his gun or furtive movements that would suggest he was drawing a weapon." (Appellant's Br. at 10.)

[11] However, a "'search' involves an exploratory investigation, prying into hidden places, or a looking for or seeking out," *Hardister v. State*, 849 N.E.2d 563, 572 (Ind. 2006), and none of that occurred here. Trooper Probasco observed the gun in plain view, and merely observing something in plain view is not a search. *See Avant v. State*, 528 N.E.2d 74, 76 (Ind. 1988) (because officer saw item in plain view, its discovery was not the product of a search within the meaning of the Fourth Amendment).

[12] After seeing the handgun, Trooper Probasco handcuffed Hutson and removed the firearm from his waistband. In *Pennsylvania v. Mimms*, the United States Supreme Court stated: "We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty." 454 U.S. 106, 110, 98 S. Ct. 330, 333 (1977). Due to this compelling interest, "[t]he Fourth Amendment allows privacy interests protected by the Fourth Amendment to be balanced against the interests of officer safety." *Wilson v. State*, 745 N.E.2d 789, 792 (Ind. 2001). For instance, "when an officer places a person into a patrol car that will be occupied by the officer or other persons, there is a significantly heightened risk of substantial danger to those in the car in the event the detainee is armed." *Id.* Thus, "it is generally reasonable for a prudent officer to pat-down persons placed in his patrol car, even absent a belief of dangerousness particularized to the specific detainee." *Id.* However,

the officer's decision to place the person in his police car must be reasonable. *Id.* Hutson was on the shoulder of I-465 at 2:00 a.m., and Trooper Probasco needed to place Hutson into his police cruiser to safely remove him from the interstate. Thus, it was reasonable for Trooper Probasco to remove Hutson's gun from his waistband, and he did not violate Hutson's Fourth Amendment rights by doing so. *See Richey v. State*, 210 N.E.3d 329, 340 (Ind. Ct. App. 2023) (officer's search of defendant before placing defendant in police vehicle was necessary for officer safety and did not violate defendant's Fourth Amendment rights), *reh'g denied*.

## 2. Article 1, Section 11 of the Indiana Constitution

[13] Hutson also challenges Trooper Probasco's stop and seizure of his handgun under the Indiana Constitution. While the language of Article 1, Section 11 of the Indiana Constitution mirrors the Fourth Amendment, we interpret Article 1, Section 11 independently. *Hardin v. State*, 148 N.E.3d 932, 941 (Ind. 2020), *cert. denied*, 141 S. Ct. 2468 (2021). Under the Indiana Constitution, we assess the reasonableness of a search or seizure by looking at the totality of the circumstances. *Id.* While other considerations may impact our analysis, we balance three factors when examining the reasonableness of a search or seizure: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

### 2.1 Stop of Hutson

[14] Hutson reasserts his argument that walking on the shoulder of I-465 is not a traffic infraction, and therefore, Hutson contends Trooper Probasco did not have valid suspicion of a violation of law to initiate the stop. However, as explained above, walking along I-465 is a traffic infraction. Trooper Probasco observed Hutson commit a traffic infraction and enforcing the traffic laws is a legitimate law enforcement need. *See Marshall v. State*, 117 N.E.3d 1254, 1262 (Ind. 2019) ("law enforcement has at least a legitimate, if not a compelling, need to enforce traffic-safety laws"). Trooper Probasco also needed to remove Hutson from the interstate for Hutson's own safety given that it was dark and that vehicles travel at a high rate of speed on the interstate highway. Moreover, a traffic stop is a minimal intrusion. *See id*. (traffic stop for speeding "amounted to a small intrusion on Marshall's ordinary activities"). Therefore, Trooper Probasco's stop of Hutson did not violate his rights under the Indiana Constitution. *See Doctor v. State*, 57 N.E.3d 846, 856 (Ind. Ct. App. 2016) (holding officers did not violate the defendant's rights under Indiana Constitution when they initiated a stop after observing a traffic violation).

### 2.2 Seizure of Hutson's Gun

[15] Hutson asserts the seizure of his handgun was not reasonable under the totality of the circumstances. However, Trooper Probasco's suspicion that Hutson was armed was high when he observed the grip of a handgun sticking out of Hutson's waistband. We agree with the State's assertion that "[s]eizing a weapon in plain view is less intrusive than a pat-down search," (Appellee's Br.

at 18), and a pat-down search is a limited intrusion on an individual's normal activities. *See Berry v. State*, 121 N.E.3d 633, 639 (Ind. Ct. App. 2019) ("There is nothing in the record that persuades us that the pat-down at issue was anything other than an ordinary pat-down, and the intrusion here was minimal."), *trans. denied*. Trooper Probasco also had a compelling need to seize the handgun for his own safety because he was about to transport Hutson in his police vehicle. Therefore, Trooper Probasco did not violate Hutson's rights under the Indiana Constitution when he seized the handgun. *See Richey*, 210 N.E.3d at 341 (seizure of defendant's gun before giving defendant a ride in police vehicle did not violate the defendant's rights under Article 1, section 11 of the Indiana Constitution).

# Conclusion

[16] Trooper Probasco did not violate Hutson's rights under either the Fourth Amendment or Article 1, section 11 of the Indiana Constitution when he stopped Hutson after observing Hutson commit the traffic infraction of walking along I-465. In addition, Trooper Probasco did not violate Hutson's rights under either the Fourth Amendment or Article 1, section 11 of the Indiana Constitution when he seized a gun in plain view before placing Hutson in his police vehicle. Therefore, we affirm the trial court.

[17] Affirmed.

Riley, J., and Bailey, J., concur.